C & J DELIVERY, INC., a corporation, Plaintiff-Appellant,

v.

VINYARD & LEE & PARTNERS, INC., a corporation, Defendant-Respondent.

No. 44201.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 1, 1983.

Shifrin, Treiman, Barken, Dempsey & Ulrich, David L. Baylard, Clayton, for plaintiff-appellant.

Robert J. Koster, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

This appeal comes from an adverse ruling denying C & J Delivery, Inc. (grantee-appellant) its claim that Vinyard & Lee & Partners, Inc. (tenant-respondent) breached the rental covenant of a lease agreement and that the rent due from the tenant under a written lease was $7,375.56.

Tenant-respondent leased the third floor of a building for a term of three years (October 1, 1975 until September 30, 1978). The lease provided an option to renew for one additional year and also contained the following clause:

> Lessor gives Vinyard & Lee & Partners, Inc. right of first refusal to purchase premises of 210–214 S. Bemiston after owner has received bonified [sic] offer of acceptable terms. Notice of said offer shall be mailed to Lessee by Certified Mail within three (3) calendar days of receipt of said offer by Lessor. Lessee shall have seven (7) days from date of receipt of notice to submit in writing an offer under the same terms and conditions to the Lessor; and if Lessee does such, Lessor agrees to sell said premises to Lessee. Closing to be within 90 days of Lessee's offer to purchase.

The real property title changed hands twice during the lease term. When the successor grantors purchased the real property, the tenant-respondent received notice of the sale but did not exercise its right to purchase. In June, 1978, the tenant-respondent in accordance with the provision of the lease, notified the successor grantors that it was exercising its option to renew the lease for one year, thus extending the lease term through 1979.

In August, 1978, the successor grantors sold the premises to the grantee-appellant. The successor grantors testified that six to eight months prior to the sale, they had spoken on an informal basis to Richard Vinyard, the tenant-respondent's chairman, indicating to him that the building was for sale. They gave Vinyard a "ballpark" figure on their asking price, and asked whether his company would be interested in purchasing the property. He stated that his

company probably would not be interested because the layout of the building was not well suited to his company's needs. No negotiations ever took place. The three witnesses all testified that these exchanges were simply "casual conversations."

When the sale to grantee-appellant took place in August, 1978, the tenant-respondent was not notified in advance or offered the opportunity to purchase on the same terms as the grantee as per the option clause. The tenant-respondent became aware of the sale in September, 1978. At that time the tenant-respondent did not object to the successor grantor conveying the premises to the grantee nor did it complain that the successor grantors violated covenant conditions of the lease. Rather, the tenant-respondent bargained with the grantee-appellant for a rental increase based upon a formula provided in the lease and negotiated a decorating allowance which was also provided in the lease. The tenant continued to remit the rental payments for six months.

On February 19, 1979, the tenant-respondent advised the grantee-appellant that it was terminating its tenancy as of March 31 because of the breach of the lease in that the tenant-respondent was not given a written notice of the sale to the grantee-appellant and the right to purchase the building under the same terms and conditions. Evidence showed that the tenant-respondent purchased another building and departed the leased premises with six months of the lease term remaining. The grantee-appellant subsequently brought this claim for rent due pursuant to a written lease.

The trial court found for the tenant-respondent "because the evidence established the provision contained in the lease granting the tenant a first right of refusal was breached by the grantee's predecessor and that said breach authorized the tenant to terminate said lease on April 1, 1979."

The grantee-appellant's principal contention of error is that the trial court erred in ruling that the previous landlord's breach of the tenant-respondent's right of first refus-

al authorized the tenant-respondent to terminate the lease and abandon the leasehold. Although the grantee-appellant asserts arguments of attornment and estoppel, the threshold question presented is whether the commercial lease at issue here constitutes a conveyance of an estate in land or a bilateral contract with mutually dependent covenants.

Resolution of this question establishes the legal rights of the parties under the October 1, 1975 lease and effectively disposes of this appeal.

■ If the lease at issue here is construed as a bilateral contract, contract law may be applied to determine the rights and duties of the parties under the lease. As is true in other bi-lateral contracts, the covenants in the lease so construed are considered mutually dependent. Thus, if there is a substantial breach of a material covenant in the lease contract, the innocent party is excused from further performance. 1 Am.Law of Property, p. 202, sec. 3.11; 6 Williston on Contracts, p. 585, sec. 890; Friedman on Leases, p. 7–8, sec. 1.1. See Bennett, The Modern Lease—An Estate in Land or a Contract (Damages for Anticipatory Breach and Independency of Covenants), 16 Tex.L.Rev. 47 (1937).

■ On the other hand, if the lease at issue is regarded essentially as a conveyance of an estate in the land, property law should be applied to determine the rights and duties of the parties. Under property law, covenants in leases are deemed independent unless expressly made dependent by the terms of the lease. Thus, when a covenant of the lease is breached by the landlord, in the absence of an express termination clause the tenant has an action for damages *but* the tenant is not excused from his own performance and he may not terminate the lease. *Rock County Savings & Trust Co. v. Yost's, Inc.*, 36 Wis.2d 360, 153 N.W.2d 594 (Wis.1967); Friedman on Leases, p. 4, sec. 1.1; 1 Am. Law of Property, p. 203, sec. 3.11.

Traditionally, common law courts have treated leases as conveyances and characterized the covenants therein as mutually independent. Williston aptly explains the underlying rationale for such construction.

"As an original question, a lease might well have been regarded as a wholly bilateral agreement by which the lessor instead of making a conveyance, promises a continuing permission to occupy the premises. If the lease were simply regarded as a contract, there would seem to be no reason why the principles of dependency applicable to ordinary bilateral contracts should not likewise be applicable to leases. Traditionally, however, this has not been the case in common law jurisdictions. This is partly because a lease is regarded primarily as a conveyance by the common law, partly because the law governing leases has been dealt with in connection with the law of real estate, and became settled before the law of mutually dependent promises was established, and partly no doubt because leases have ordinarily been elaborately written documents in which the parties might be supposed to have expressed their intent with considerable fullness, covenants in leases have been held mutually independent unless in terms expressly conditional."

6 Williston on Contracts, pp. 585–589, sec. 890.

Recently, a few courts have looked to the realities underlying a modern commercial lease and have disregarded the common law rules in favor of treating a lease as a bilateral contract, with mutually dependent covenants. For example, in *Pawco, Inc. v. Bergman Knitting Mills, Inc.,* 283 Pa.Super. 443, 424 A.2d 891 (1980), a Pennsylvania court stated that the actual subject matter of most leases, commercial or residential, is the building leased and not the underlying land. Contract law rather than property law should, therefore, be applied in disputes between landlords and tenants. The court held that the contract rule of mutually dependent promises must be applied where a landlord's promise to perform is "essential" or a "significant inducement" to the tenant entering into a lease at all. *See Teodori v. Werner,* 490 Pa. 58, 415 A.2d 31 (Pa.1980).

Similarly in *Albert M. Greenfield and Company, Inc. v. Kolea,* 475 Pa. 351, 380 A.2d 758 (Pa.1977), the Pennsylvania court applied the contract law of mutually dependent promises in allowing the tenant to terminate his lease on the grounds of frustration of commercial purpose after the accidental destruction of the leased building by fire.[1]

Missouri courts have not had occasion to decide whether property law or contract law should be applied to commercial leases in light of modern day realities. Since we have uncovered no Missouri case specifically addressing this issue, we resort to general principles in determining the question.[2]

■ Initially, we note that a lease creates an estate in the land. *St. Louis Terminals v. City of St. Louis,* 535 S.W.2d 593 (Mo.App.1976); *Friend v. Gem International Inc.,* 476 S.W.2d 134 (Mo.App.1971). However, our courts also acknowledge that a lease is both a contract and a conveyance. In *St. Louis Terminals v. City of St. Louis,* 535 S.W.2d at 596–97, this court held:

> "The term lease must be taken in its ordinary meaning. It is generally held that a lease is a species of contract for the possession and profits of land for a determinate period, which must be less than the term of the landlord, with the recompense of rent. 51C C.J.S. Landlord and Tenant § 202(2), p. 519. A lease creates an estate in the tenant with transfer of exclusive possession and control of the premises to the tenant subject to such conditions as may be imposed by the terms of the contract creating the tenancy. *Friend v. Gem International Inc.,* 476 S.W.2d 134 (Mo.App.1971).

■ *St. Louis Terminals* recognizes the dual nature of a lease. A lease is a species of "contract" which creates an "estate" in the land *subject to* any conditions by the parties. In effect, any conditions imposed by the parties make the relevant covenants dependent upon certain acts or events. *St. Louis Terminals,* thus, follows the common law rule which treats a commercial lease as a conveyance and lease covenants as mutually independent promises *unless* expressly made dependent. Absent such an express proviso in the lease, a breach by either party of a covenant on his part neither terminates the lease nor excuses the performance of the innocent party under the lease. 51C C.J.S. Landlord and Tenant § 113, p. 357; 49 Am.Jur.2d Landlord and Tenant § 1020, p. 991.

■ A review of the record of the instant case shows that the October 1, 1975 lease at issue here contained no express termination clause and was wholly silent on the effect of a covenant breach by the parties. Therefore, the independent covenant rule applies and tenant-respondents had no right to terminate the lease upon grantee-appellant's breach of the covenant of first refusal. *Rock County Savings & Trust Co. v. Yost's, Inc.,* 36 Wis.2d 360, 153 N.W.2d 594, 598 (Wis.1967); Friedman on Leases, p. 5, sec. 1.1. Moreover, tenant-respondent's abandonment of the premises before the expiration of the term neither prejudiced grantee-appellant's right to recover the full amount of the rental due nor abrogated the landlord-tenant relationship. *Miller v. Compton,* 185 S.W.2d 754 (Tex. App.1945); 1 Am. Law of Property, p. 178,

1. *See* Friedman on Leases, p. 6–10, sec. 1.1, for a discussion of other inroads on the "independence" of lease covenants. *See* also *Ringwood Associates v. Jack's of Route 23,* 153 N.J.Super. 294, 379 A.2d 508 (1977).

2. We recognize that the modern realities of a commercial lease and the true intention of the contracting parties may militate in favor of treating a commercial lease as a wholly bilateral agreement.

 However, no evidence was adduced at trial here which suggests that the right of first refusal was "essential" or a "significant induce-

ment" to the tenant-respondent entering into the lease, as was present in *Pawco, Inc. v. Bergman Knitting Mills, Inc., supra.* Additionally, no evidence was adduced that grantee-appellant's breach of its covenant of first refusal was such a "frustration of commercial purpose" as to warrant tenant-respondent's termination of the lease, as was present in *Albert M. Greenfield, Inc. v. Kolea, supra.*

 Since the record and the posture of this case prevent us from addressing this issue, we make no determination of that issue.

sec. 3.2 (1952); 51C C.J.S. Landlord & Tenant § 113, p. 357. Thus, in the instant case the trial court erred in finding that the breach of the covenant of first refusal "authorized the tenant to terminate said lease on April 1, 1979."

 Although tenant-respondent here could not terminate the lease for breach of the covenant of first refusal, he is not without remedy.

An option to purchase leased premises is specifically enforceable. Thus, the lessor's repudiation of the lease or the option gives rise to an immediate action for specific performance. Or the tenant may sue at law for damages which is his only recourse against the original lessor if the optioned property has been transferred to a third party. Since an option to purchase is a covenant which runs with the land, it may be specifically enforced against a transferee of the reversion with actual or constructive notice of the tenant's interest.

Schoshinski, American Law of Landlord and Tenant, p. 631–32, sec. 9:13 (1980). *See,* Friedman on Leases, p. 615, sec. 15.1.

*Schoonover v. Kahn,* 377 S.W.2d 535 (Mo. App.1964), presented a similar fact situation to the instant case. In *Schoonover,* the landlord of a commercial property sold the premises to a third party in breach of covenant conferring on the lessee an option to purchase. The court held that the lessee was not required to seek specific performance of the option from the third party. Since the landlord by his act in conveying the property made it impossible for him to honor the option, the plaintiff was entitled to seek damages from the landlord directly.

In *Barling v. Horn,* 296 S.W.2d 94 (Mo. 1956), the landlord sold a commercial property in violation of a covenant granting the lessee a first opportunity to purchase. The lessee sought specific performance against the grantee of the property. The court held that where the grantee had actual as well as constructive notice of the option covenant, and where the lessee was willing and able to exercise the option to purchase, the court would grant specific performance of the option against the grantee.

 An option to purchase and a right of first refusal are covenants which run with the land. Schoshinski, American Law of Landlord and Tenant, p. 623, sec. 9:10 (1980); Friedman on Leases, p. 1251, sec. 36.4. As such they are binding on a purchaser of the reversion charged with notice of the lease. A purchaser for value takes subject to the lease and the covenants therein if he has actual or constructive notice of it. Either possession of the lessee or the fact that the lease is recorded puts the purchaser on notice. 1 Am. Law of Property, p. 307, § 3.59.

 It is undisputed that in the instant case that grantee-appellant had actual notice of the October 1, 1975 lease and possession of the premises by the tenant-respondent. When the grantor sold the leased premises to the grantee-appellant in breach of the right of first refusal, the tenant-respondent had a cause of action for damages against the grantor or in the alternative a right of specific performance against the grantee-appellant who took the reversion with notice of the lease. Since tenant-appellant failed to invoke his right of specific performance within a reasonable time after the breach, he must be deemed to have waived that right. However, tenant-appellant retains its cause of action against the grantor for breach of the covenant of first refusal, provided only that it brings its suit within the period of time fixed by the statute of limitations. *See Abdallah v. Abdallah,* 359 F.2d 170, 17 A.L. R.3d 967 (3rd Cir.1966); Annot., Tenant's Right to Damages for Landlord's Breach of Tenant's Option to Purchase, 17 A.L.R.3d 976 (1968).

For the reasons stated herein, the order of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

SMITH, P.J., and SATZ, J., concur.