**In re STALTER & COMPANY, LTD., Debtor.**

**KEATY & KEATY, Appellant,**

**v.**

**LOYOLA ASSOCIATES and Stalter & Company, Ltd., Appellees.**

**Bankruptcy No. 88–1988–THK. Civ. A. No. 89–0037.**

United States District Court, E.D. Louisiana.

April 24, 1989.

---

Frank M. Adkins, Jonathan L. Bookman, Pamela G. Ferrage, Bronfin, Heller, Steinberg & Berins, New Orleans, La., for debtor. Mitchell Hoffman, Judith Kaufman, Lowe, Stein, Hoffman & Allweiss, New Orleans, La., for Keaty & Keaty.

Charles C. Coffee, James Burton, Simon, Peragine, Smith & Redfearn, New Orleans, La., for Loyola Associates.

## OPINION

PATRICK E. CARR, District Judge.

This matter came before the Court on March 15, 1989 for hearing on (1) Keaty & Keaty's appeal from the Bankruptcy Court's order of November 17, 1988 denying its motion to vacate and (2) on Loyola Associates' motion for sanctions against appellant and its counsel for a frivolous appeal.[1] For the following reasons, the Court now AFFIRMS the order of the Bankruptcy Court, GRANTS Loyola's motion for sanctions, and REMANDS the matter to the Bankruptcy Court for assessment of double costs and reasonable attorney's fees.

### I.

In 1985, Loyola Associates leased to Stalter & Company certain office premises in the Energy Centre, an office building in downtown New Orleans. The base rent was $21/ft$^2$/year plus a pro-rata share of the building's operating costs.

In 1987, Stalter subleased the entire premises to Keaty & Keaty, a regional lawfirm. The rent on the sublease was

---

1. Prior to Loyola's filing its motion, the Court preliminarily intended not to hold oral argument. *See* Bankr.R. 8012(1), (3). However, in order to give appellant and its counsel an opportunity to present whatever further evidence or argument they wished concerning sanctions, *cf., e.g., Coghlan v. Starkey,* 845 F.2d 566, 571 (5th Cir.1988) (where the Court sua sponte raises the issue of sanctions against a person, that person should be given an opportunity to show cause why sanctions should not be imposed), the Court decided to hold a hearing, with oral argument on the appeal as well.

2. Keaty & Keaty argued in the Bankruptcy Court that it did not initially receive notice of Stalter's motion to reject; it subsequently did receive formal notice and was not precluded from presenting its opposition to the Bankruptcy Court. Thus, Keaty & Keaty does not, as it should not, raise on appeal this issue of its alleged initial lack of notice.

$6/ft $^2$/year with no charge for any building operating costs.

In May 1988, Stalter filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Louisiana. In June 1988, Stalter (as trustee/debtor-in-possession) moved the Bankruptcy Court for approval to reject both the master lease and the sublease for the premises. In July 1988, the Bankruptcy Court granted such approval;[2] no subsequent notice or paper was filed in the Bankruptcy Court record affirmatively indicating that Stalter indeed chose to reject the two leases.

Loyola and Keaty & Keaty attempted to negotiate a new lease for the premises, but were unable to agree. On September 13, 1988, Loyola moved in a Louisiana state court for a summary eviction hearing to be held on November 18, 1988.

On October 20, 1988, Keaty & Keaty moved the Bankruptcy Court to vacate its earlier order authorizing Stalter to reject its master lease and sublease. Both Loyola and Stalter opposed the motion. By written order entered November 17, 1988, after a hearing on the motion, the Bankruptcy Court denied the motion and stated that Keaty & Keaty's right to remain on the premises was solely an issue of Louisiana state law for a Louisiana state court to decide. Keaty & Keaty immediately appealed to this Court.

At the state court eviction hearing held the next day, the state court granted Keaty & Keaty's motion for a stay of the eviction proceedings pending the appeal of the Bankruptcy order, but required that Keaty & Keaty submit a memo by December 21, 1988 showing that it "was more likely than not to prevail in its appeal."

On December 10, 1988, Keaty & Keaty voluntarily vacated the premises, and thus the eviction proceeding became moot. Keaty & Keaty still maintains it has a right to monetary damages from Loyola.

From at least October 1988, when the motion to vacate was filed, Keaty & Keaty has been represented by Mitchell Hoffman and Judith Kaufman of the lawfirm Lowe, Stein, Hoffman & Allweiss.

## II.

The Bankruptcy Court held, over Keaty & Keaty's objection, that Stalter should be permitted to reject both its master lease from Loyola Associates and its sublease to Keaty & Keaty. The ultimate issue before this Court, then, is whether the Bankruptcy Court abused its discretion in so holding.

As guidance for the exercise of its discretion, the Bankruptcy Court turned to certain provisions of 11 U.S.C. § 365. These provisions, the Bankruptcy Court found, afforded no independent right for Keaty & Keaty to remain in the premises and thus provided no basis for the Bankruptcy Court not to grant Stalter's motion to reject its two leases.

If the Bankruptcy Court exercised its discretion under an erroneous understanding of the law, then this Court must vacate the Bankruptcy Court's order and remand the matter for further consideration. The issue for this Court, thus, becomes whether the Bankruptcy Court correctly interpreted 11 U.S.C. § 365. On this alone, the parties appear to agree.

The whole dispute turns on three provisions in one section of the Bankruptcy Code, 11 U.S.C. § 365(a), (d)(4), and (h)(1):

(a) Except as provided ... in subsection ... (d) of this section, the trustee, subject to the court's approval, may assume or reject any ... unexpired lease of the debtor.

(d)(4) ... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is lessee with 60 days [of the filing of its bankruptcy petition] ..., then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential property to the lessor.

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor ..., the lessee ... may treat such lease ... as terminated by rejection ...; or, in the alternative, the lessee ... may remain in possession of the leasehold ... for the

balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable non-bankruptcy law.

While Stalter sought and received Bankruptcy Court approval to reject both the master lease and the sublease, Stalter never formally gave notice of its having chosen to reject the two leases in light of the approval. Thus, the provisions of § 365(d)(4) apply and deem Stalter to have rejected both leases.[3]

Further, in accordance with the specific terms of § 365(d)(4), Stalter was to "immediately surrender" the premises to Loyola. In other words, upon the expiration of 60-days, Stalter retained no possessory or other property rights of any kind in the premises.

■ Keaty & Keaty argues that § 365 gives it the right—independent of and superior to any Louisiana state law to the contrary (viz., that a sublessee has no greater right in real property than does its sublessor, *see Brown v. Mayfield*, 488 So. 2d 322, 324 (La.App. 3d Cir.1986) (citing *Ogden v. John Jay Esthetic Salons, Inc.*, 470 So.2d 521, 524 (La.App. 1st Cir.1985))— to remain on the premises merely upon paying the rent called for in the sublease. It cites no cases in support of its argument; it merely points to two words in the legislative history on this section:

> Subsection (h) protects real property lessees of the debtor if the trustee rejects an unexpired lease under which the debtor is the lessor (*or sublessor*). The subsection permits the lessee to remain in possession of the leased property or to treat the lease as terminated by the rejection.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 349 (1977), *reprinted in* 1978 U.S.Code, Cong. & Admin.News 5963, 6305; *accord* Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978), *reprinted in* 1978 U.S.Code, Cong. & Admin.News 5787, 5846. This squib simply does not purport to address the right of a sublessee to remain on a premises when the debtor/sublessor/primary-lessee has rejected not only the sublease, but also the master lease.

Equity, common sense, and the statute all point against Keaty & Keaty's position. Because Loyola's summary of its brief succinctly, clearly, and correctly sets for the patent flaws of Keaty & Keaty's argument, the Court repeats this summary:

> 11 U.S.C. § 365 governs a bankrupt's acceptance or rejection of executory contracts and unexpired leases. In the event of rejection of an unexpired lease by the debtor *as lessor or sublessor*, § 365(h) affords specific rights and remedies to the rejecting debtor and to its tenant or subtenant. Section 365(h) does *not* purport to afford the tenant of such a rejecting debtor rights against anyone other than the debtor. Moreover, § 365(d)(4) specifically requires that if a bankrupt, *as lessee*, rejects an unexpired lease of nonresidential real property, "he shall immediately surrender such nonresidential real property to the lessor." Accordingly, Keaty & Keaty's contention that § 365(h) gives it the right to hold the Leased Premises as Loyola's unwelcome guest is not unsupported by the text of § 365(h) but is flatly contradicted by § 365(d)(4)'s grant to Loyola of the right immediately to regain its property.

A law that commands two mutually exclusive events cannot be obeyed. The only rational view is that § 365(h) does *not* afford Keaty & Keaty a right against Loyola to occupy the Leased Premises after Stalter's rejection of the Master Lease. Accordingly, the rights of Loyola and Keaty & Keaty against each other are questions of state law to be decided by the state court, as was correctly [noted] by the Bankruptcy Court in this case and in every other case

---

**3.** Earlier and related cases are numerous and unanimous on this point. *See, e.g., In re Lovitt*, 757 F.2d 1035, 1041 (9th Cir.) (under § 365's predecessor, an unexpired lease is rejected unless the trustee affirmatively seeks approval to assume and the bankruptcy court grants such approval), *cert. denied sub nom. Cheadle v. Appleatchee Riders Ass'n*, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985); *cf. In re Tonry*, 724 F.2d 467, 469 (5th Cir.1984) (same under § 365 for executory contracts).

found where the Bankruptcy Court considered the issue of a subtenant's rights under § 365(h) against the owner of leased property. *In re Dial–A–Tire, Inc.*, 78 B.R. 13[, 16] (Bankr.W.D.N.Y. 1987); *In re Elmhurst Transmission Corp.*, 60 B.R. 9[, 10] (Bankr.E.D.N.Y. 1986); and *In re United Foam Corp.*, 20 B.R. 766[, 769] (Bankr.C.D.Cal.1982).

11 U.S.C. § 365(h), however, *does* address the rights of Keaty & Keaty as against Stalter. Had Stalter, as Loyola's lessee, *accepted the Master Lease, but, as sublessor, rejected Keaty & Keaty's sublease,* § 365(h) would have afforded Keaty & Keaty certain rights of occupancy as against Stalter, its sublessor. Stalter's rejection as lessee of the Master Lease, by terminating the very rights that Stalter had sublet to Keaty & Keaty, caused the demise of the Sublease and deprived Keaty & Keaty of any right to occupy the Leased Premises. Keaty & Keaty's remedy for all damages resulting from Stalter's action is to treat the Sublease as terminated, as is its undisputed right under § 365(h), and to file a general claim against Stalter's estate in Stalter's bankruptcy proceeding. This remedy is specifically created by 11 U.S. C. § 502(g) and has been recognized by the Bankruptcy Court. *In re Stable Mews Associates*, 41 B.R. 594, 597 (Bankr.S.D.N.Y.1984).

Loyola's Appellee Brief at 5–6.

While § 365(h) gives a sublessee the right to maintain its possessory interest in a subleasehold when the debtor has rejected the sublease, there is *no real property to which the subleasehold* attaches as soon as the primary lease is terminated. In other words, § 365(h) does not give a subtenant any further rights to prevent any termination, for whatever reason, of the underlying master lease, in addition to whatever nonbankruptcy rights the subtenant may already have.

Further, Keaty & Keaty articulates no general purpose that would be served by requiring one creditor of a debtor (viz., Loyola) to hold another creditor of the debtor (viz., Keaty & Keaty) completely harmless from the effects of the debtor's bankruptcy. Like other creditors, Keaty & Keaty may look only to the debtor for what remedies it may be due because of the debtor's having filed bankruptcy. In other words, the general equity principles of bankruptcy law reject Keaty & Keaty's position as well.

### III.

Loyola seeks sanctions under F.R.Civ.P. 11 from Keaty & Keaty and its counsel for pursuing an appeal that not only (1) was not well-grounded in the law and did not seek a good faith extension or modification of existing law, but also (2) was filed solely for purposes of delaying the state court eviction proceedings (and generally, its duty to vacate the premises). Loyola seeks reimbursement for the costs of the state court proceedings, the bankruptcy court motion, and the instant appeal.

### A.

Both Loyola and Keaty & Keaty appear to assume that F.R.Civ.P. 11 governs the instant dispute. The assumption is incorrect.

Because this is a bankruptcy appeal, Rule 11 itself does not apply by its own terms. *See In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir.1987); F.R.Civ.P. 81(a)(1) ("These rules do not apply ... to proceedings in bankruptcy"). However, Bankruptcy Rule 9011 contains the almost identical provisions as F.R.Civ. P. 11 and thus policies concerning and cases addressing Rule 11 should apply equally in the bankruptcy context. It is a separate issue, however, whether Bankr.R. 9011 applies to appeals to a district court from the bankruptcy court or instead only to proceedings in the bankruptcy court. *See In re D.C. Sullivan Co.*, 843 F.2d 596, 598 & n. 6 (1st Cir.1988).

In *Akros Installations*, the Ninth Circuit held that neither F.R.Civ.P. 11 nor Bankr. R. 9011 applies to appellate bankruptcy proceedings before a district court, but that a district court has the power to impose sanctions for a frivolous bankruptcy appeal based upon either the inherent power of

the judiciary or the statutory authority in 28 U.S.C. § 1927; as the opinion reveals, however, the analysis under any of these sources is largely the same. The Fifth Circuit has not addressed this specific issue yet.[4] In a case where a district court was acting as the bankruptcy trial court (viz., where the district court had withdrawn the reference to the bankruptcy court), however, the Fifth Circuit has upheld, under the apparent authority of both F.R.Civ.P. 11 and 28 U.S.C. § 1927, the district court's sanctions in the form of attorney's fees. *See In re Ginther,* 791 F.2d 1151, 1154–56 (5th Cir.1986).

Like the First Circuit in *D.C. Sullivan,* this Court leaves the technical distinctions for another day, for under the circumstances before this Court today the same result follows whether F.R.Civ.P. 11, Bankr.R. 9011, 28 U.S.C. § 1927, or the court's inherent power is used as the basis for sanctions in the form of costs and attorney's fees.

### B.

As Loyola's briefs amply show, there is little to no basis of law for the position urged by and on behalf of Keaty & Keaty. The single excerpt from the legislative history mentioning the word "sublessor" just does not support, in any shape or fashion, Keaty & Keaty's argument—not that the excerpt rejects its argument, the excerpt simply is not concerned with and does not address its argument.

Keaty & Keaty and its counsel suggest that sanctions are inappropriate because the sole case law on the issue consists of three bankruptcy court opinions from other circuits. In no way does it follow in all instances, however, that a lack of appellate opinions on an issue necessarily precludes

the imposition of sanctions on the ground that a party's argument as to the law on that issue is wholly frivolous. There is no more case law for the very reason that the statutory provisions (as well as general equitable considerations of bankruptcy) are so clear that no appellate ruling is necessary to show the frivolousness of the position of Keaty & Keaty and its counsel. Where as here a statutory provision is crystal clear in its meaning, little, if any, case-law on its interpretation is to be expected.

■ In sum, the Court holds that the appeal was wholly frivolous and unreasonable and was not well-grounded in the law and did not seek a good faith extension or modification of existing law.[5] Finding both Keaty & Keaty and its counsel (Mitchell Hoffman and Judith Kaufman)[6] equally culpable in maintaining this position, the Court further holds that sanctions are due, as requested, against both Keaty & Keaty and its counsel.

### C.

■ A separate issue remains as to the appropriate sanction to be imposed. A party seeking sanctions has an obligation to mitigate its damages by giving prompt notice. *See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 879–81 (5th Cir.1988) (en banc) (citing *Trevino v. Holly Sugar Corp.,* 811 F.2d 896 (5th Cir.1987) (upholding a denial of sanctions, where movant did not seek sanctions for an allegedly frivolous claim until over two years after the claim was filed)). Having failed to raise the issue of sanctions in the Bankruptcy Court, neither Loyola nor Stalter should now be able to recover their costs for proceeding there. Similarly, a federal court may not impose Rule 11–type sanc-

---

**4.** In *Akros Installations,* the Ninth Circuit erroneously assumed that the Fifth Circuit has decided this issue in *Ginther* (and that the Fifth Circuit held contrary to the Ninth Circuit). *See Akros Installations,* 834 F.2d at 1532. In *Ginther,* the district court was acting not as a bankruptcy appellate court, but instead as a bankruptcy trial court. *See Ginther,* 791 F.2d at 1152.

**5.** The Court does not address Loyola's (facially well-founded) position that the sole purpose for

Keaty & Keaty's appeal was delay. First, resolution of this issue is unnecessary in light of the Court's holding. Second, in order to resolve this issue, either this Court or the Bankruptcy Court would have to make additional findings of fact in an unproductive use of time and effort.

**6.** Ms. Kaufman signed all the appeal briefs, and Mr. Hoffman presented oral argument on the appeal.

tions against an attorney or a party for frivolous pleadings filed in state court. *See Foval v. First National Bank of Commerce,* 841 F.2d 126, 130 (5th Cir.1988). In sum, the appropriate sanctions should only be for the expense to Loyola and Stalter[7] in having to defend the appeal. The Court holds that Loyola and Stalter are each entitled to recover double costs and reasonable attorney's fees incurred in this appeal. *See Ginther,* 791 F.2d at 1156; *cf.* F.R.App.P. 38.

Following the Fifth Circuit's common practice concerning the fixing of the amount of attorney's fees and costs for a frivolous appeal, the Court remands this matter to the Bankruptcy Court for the sole purpose of determining the amount of reasonable attorney's fees and costs incurred by appellees in this appeal.[8] *See Ginther,* 791 F.2d at 1156; *Olympia Co. v. Celotex Corp.,* 771 F.2d 888, 894 (5th Cir. 1985). The Bankruptcy Court is directed to make separate determinations for Loyola and Stalter and to apportion each of the two amounts equally between Keaty & Keaty on the one hand and their counsel on the other.

### IV.

For these reasons, the Court AFFIRMS the order of the Bankruptcy Court, GRANTS Loyola's motion for sanctions, and REMANDS the matter to the Bankruptcy Court to assess reasonable attorney's fees and double costs in accordance with this opinion.

---

7. The sole pleading in the appellate record from Stalter is a brief adopting Loyola's position and making no mention or reference to Loyola's subsequent motion for sanctions. To the extent Stalter should be deemed to have not yet requested sanctions, the Court exercises its power to impose them *sua sponte* as to Stalter. *See, e.g., McDougal v. Comm'r,* 818 F.2d 453, 455 (5th Cir.1987).

8. It is this Court's general practice to submit the issue of attorney's fees to a magistrate for a report and recommendation in accordance with Local Rules 20.1(a), 20.4, and 21.16; this procedure, however, appears questionable in the context of a bankruptcy appeal. *Compare Minerex Erdoel, Inc. v. Sina, Inc.,* 838 F.2d 781 (5th Cir.) (a bankruptcy appeal may not be referred to a magistrate, even on the consent of all parties), *cert. denied sub nom. Baker, Smith & Mills v. Minerex Erdoel, Inc.,* ⸺ U.S. ⸺, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988) *with Matter of Nix,* 864 F.2d 1209, 1210–11 (5th Cir.1989) (magistrate may hear core bankruptcy proceedings, at least on the consent of all interested parties).