**BLOCK PROPERTIES COMPANY, INC., and R.H. Sailors & Company Real Estate, Respondents,**

v.

**AMERICAN NATIONAL INSURANCE COMPANY, a Texas corporation, Appellant.**

**No. WD 56270.**

Missouri Court of Appeals, Western District.

Aug. 10, 1999.

Robert P. Smith, Kansas City, for Respondents.

Ben R. Swank, Jr., Kansas City, for Appellant.

Before: EDWIN H. SMITH, P.J., and HANNA and SPINDEN, JJ.

EDWIN H. SMITH, Presiding Judge.

American National Insurance Company appeals from the summary judgment of the circuit court in favor of the respondents, Block Properties Company, Inc., and R.H. Sailors & Company Real Estate, on their petition for declaratory judgment. The action below results from a bankruptcy proceeding in which Food Barn Stores, Inc. (Food Barn), rejected its master lease with the lessor, the appellant, and its sublease with the sublessee, S–B Partnership, a partnership of the respondents, concerning commercial property located in a shopping center (the property). The property was subleased by the partnership to Hobby Lobby Stores, Inc. (Hobby Lobby). In their declaratory judgment action, the re-

spondents requested the circuit court to declare that the rejection by Food Barn of its master lease with the appellant did not result in a termination of the master lease, sublease, or sub-sublease concerning the property; or in the alternative, that they had a right to remain in possession of the property pursuant to § 365(h)(1)(A) of the Bankruptcy Code (the Code).[1]

The appellant raises two points on appeal. In both points, it claims that the trial court erred in entering summary judgment in favor of the respondents declaring that their rights under their sublease with Food Barn were not terminated because, under the undisputed facts, they were not entitled to judgment as a matter of law. In its first point, it claims that the rejection of the master lease by Food Barn in its bankruptcy proceeding resulted in the termination of not only the master lease, but the sublease and sub-sublease thereunder, pursuant to the Code. In its second point, it makes the same claim but, in doing so, relies on state law and the terms of the sublease, rather than the Code, as in its first point.

We affirm.

### Facts

On August 23, 1971, Leo Eisenberg, the original owner of the property, located at 5440 N.W. 64th Street in Kansas City, Missouri, leased the property to Safeway Stores, Inc., for a term of twenty years. He subsequently assigned his interest in the lease to the appellant, and Safeway assigned its interest to Food Barn. The master lease was originally scheduled to expire on August 31, 1992, but was extended until August 30, 2002. Food Barn had the option to renew the lease up to six times for periods of five years each. On November 15, 1988, Food Barn entered into a sublease with S–B Partnership wherein the partnership agreed to lease the property through August 19, 2002, with an option to renew the lease for up to six additional periods of five years each.

On February 22, 1990, S–B Partnership entered into a sub-sublease with Hobby Lobby wherein it agreed to lease the property to it through August 18, 2002, with Hobby Lobby having an option to renew the lease for up to three additional periods of five years each.

Under the terms of the master lease, Food Barn was obligated to pay rent to the appellant in the amount of $15,335.86 per month. Under the sublease, S–B Partnership was obligated to pay rent to Food Barn in the same amount. Under the sub-sublease, Hobby Lobby was obligated to pay minimum rent to S–B Partnership in the amount of $15,254.17 per month from February 22, 1990, through August 18, 1992; $15,711.79 per month from August 19, 1992, through August 18, 1994; $16,550.77 per month from August 19, 1994, through August 18, 1998; and $17,313.48 per month from August 19, 1998, through August 18, 2002. If Hobby Lobby chooses to exercise its option to renew the lease, it will be obligated to pay minimum rent in the amount of $18,110.13 per month from August 19, 2002, through August 18, 2007; $19,063.85 per month from August 19, 2007, through August 18, 2012; and $20,062.46 per month from August 19, 2012, through August 18, 2017. Hobby Lobby is also required to pay a percentage rent based on its gross receipts throughout the life of the sub-sublease. As such, the respondents had an equity position with regard to the sub-sublease beginning on August 19, 1992, when the rent they received for the property exceeded the rent they were required to pay.

On January 5, 1993, Food Barn filed its voluntary Chapter 11 petition for reorganization in the United States Bankruptcy Court for the Western District of Missouri (the bankruptcy proceeding). Food Barn managed its business as a debtor in possession, ceased operations, and sold almost all of its properties. Its sole remaining non-operating property was the property

---

1. All references to "the Bankruptcy Code" are to 11 U.S.C. §§ 101–1330 (1994).

at issue here which it leased from the appellant under the master lease. During its bankruptcy proceeding, Food Barn filed four motions to extend the time to assume or reject its unexpired leases of nonresidential real property pursuant to § 365(d)(4) of the Code. After its fourth motion, the bankruptcy court extended the time limit to assume or reject the leases to and including May 16, 1994, and ordered Food Barn to continue making all payments under its leases, including post-petition rents. On June 23, 1994, Food Barn filed its motion to assume and assign to the respondents the master lease and sublease of the property at issue here. The appellant objected to the motion asserting that, pursuant to § 365(d)(4) of the Code, the leases were deemed rejected as they had not been assumed or rejected by Food Barn by the deadline imposed by the court. The bankruptcy court agreed with the appellant that the leases had been deemed rejected. As such, on September 13, 1994, the bankruptcy court, the Honorable Frank W. Koger, entered its order denying Food Barn's motion to assume and assign the leases (the bankruptcy court order). *See In re Food Barn Stores, Inc.*, 174 B.R. 1010 (Bankr.W.D.Mo.1994). Food Barn appealed this order, but the appeal was subsequently dismissed.

As a result of the bankruptcy court order denying Food Barn's motion to assume and assign the leases, the respondents informed the appellant by letter that they were asserting their rights pursuant to § 365(h)(1) of the Code to remain in possession of their leasehold interest for the balance of the term of the lease and for any renewals of such term. After receiving this letter, the appellant served notice on Food Barn and the respondents to quit and deliver the leased premises to its possession by October 31, 1994, which the respondents refused. Thereafter, on December 2, 1994, the respondents filed their three-count amended petition in the Circuit Court of Platte County, Missouri. In Count I, they asserted a claim for wrongful termination and eviction; in Count II

they asserted a claim for conversion; and in Count III they sought a declaratory judgment declaring that the rejection by Food Barn of the master lease and sublease did not effectuate a termination of the master lease, sublease, or sub-sublease, or in the alternative, that they had a right, pursuant to § 365(h)(1)(A) of the Code, to remain in possession of the leased premises.

On February 5, 1995, the respondents filed a motion for summary judgment as to Count III of their amended petition or, in the alternative, as to Counts I and II. In their motion, the respondents argued that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. In their suggestions in support of their motion, the respondents argued that the only issue for the court to decide was the legal effect of Food Barn's rejection of the master lease and sublease. The respondents, relying on § 365(g) of the Code, argued that the rejection of the leases was a mere breach of the contracts and did not serve to terminate any of the leases. They further argued that, pursuant to § 365(h)(1)(A) of the Code, they had the option to remain in possession of the leased premises. In its response to the respondents' motion for summary judgment, the appellant agreed that there were no genuine factual disputes but argued that under the prevailing law the rejection of a lease terminated that lease and all derivative leases. It further argued that because the master lease, sublease, and sub-sublease were terminated by Food Barn's rejection of its master lease and sublease, the respondents had no right to remain in possession of the premises under either the Code or state law.

A hearing on the respondents' motion for summary judgment was held on September 8, 1995, before the Honorable Ward B. Stuckey. Following this hearing, the trial court entered its order finding that the rejection by Food Barn of its master lease and sublease did not termi-

nate the master lease, sublease, or sub-sublease. As such, on September 27, 1995, the trial court granted the respondents' motion for summary judgment as to Count III of their petition. The respondents subsequently dismissed Counts I and II of their amended petition without prejudice. On November 27, 1995, the appellant filed its notice of appeal of the circuit court's order in this court. The respondents moved to dismiss the appeal alleging that the appellant's notice of appeal was untimely filed. On December 13, 1995, the appellant filed its motion to voluntarily dismiss the appeal. As such, on December 14, 1995, this court entered its order dismissing the appeal and denying the respondents' motion to dismiss as moot.

Thereafter, on December 5, 1997, the appellant filed an adversary complaint for declaratory judgment in the United States Bankruptcy Court for the Western District of Missouri seeking a declaration that under the prior bankruptcy court order: (1) Food Barn's rejection of the master lease effected a termination of the master lease and all derivative leases; (2) the respondents had no right to remain in possession of the leased premises; and (3) the issues litigated in the circuit court had been finally determined by the bankruptcy court in its prior order. On January 7, 1998, the respondents filed a motion to dismiss the adversary proceeding. The bankruptcy court found, pursuant to the Rooker–Feldman doctrine, that it lacked jurisdiction to review the determination of the circuit court because the appellant's claim was inextricably intertwined with the state court judgment and a judgment by the bankruptcy court in favor of the appellant would effectively reverse the circuit court's order. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206, 218 (1983). In its order, the bankruptcy court specifically noted that its prior order did not address whether the deemed rejection of the master lease and

sublease terminated the master lease, sublease, and sub-sublease. As such, on March 4, 1998, the bankruptcy court granted the respondents' motion and dismissed the adversary proceeding with prejudice.

Thereafter, on May 5, 1998, the appellant filed a motion in the circuit court of Platte County requesting that the court reconsider its earlier order or, in the alternative, enter a final, appealable order. This motion was denied by the trial court on June 5, 1998. On July 2, 1998, the appellant filed a petition for a writ of *mandamus* in this court directing the trial court to enter a final judgment on its earlier order of summary judgment from which it could appeal. On July 30, 1998, this court sustained the appellant's petition and entered its preliminary writ of *mandamus* directing the trial court to enter a written ruling denominated a judgment and resolving all issues in the case. As such, on August 13, 1998, the trial court entered its amended judgment: (1) granting the respondents' motion for summary judgment as to Count III of their amended petition finding that the rejection by Food Barn of its master lease did not terminate the master lease, sublease, or the sub-sublease; (2) denying their motion for summary judgment as to Counts I and II of their amended petition; and (3) dismissing Counts I and II of their amended petition without prejudice.

This appeal follows.

### Standard of Review

When considering appeals from summary judgments, the [c]ourt will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact; and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

### I.

█ In Point I, the appellant claims that the trial court erred in entering summary judgment in favor of the respondents, declaring that their rights to the property under their sublease with Food Barn were not terminated because, under the undisputed facts, they were not entitled to judgment as a matter of law in that Food Barn's rejection of the master lease in its bankruptcy proceeding terminated not only the master lease, but all subleases thereunder pursuant to § 365(d)(4) of the Code. We disagree.

To be entitled to summary judgment, under Rule 74.04,[2] on their petition for declaratory judgment, the respondents were required to show that: (1) there was no genuine dispute as to any of the material facts on which they relied to recover and had the burden of persuasion at trial; and (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin.*, 854

S.W.2d at 381. Hence, to make a *prima facie* case for summary judgment as claimants, they were required to demonstrate that each and every proof element of their claim was established with undisputed facts. *ITT Commercial Fin.*, 854 S.W.2d at 381.

Assuming a *prima facie* case for summary judgment was made by the respondents, the burden would then have shifted to the appellant, as the non-movant, to show that the respondents were not entitled to summary judgment as they alleged. *Id.* To carry its burden, the appellant was required to "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the [respondents] to be above any genuine dispute is, in fact, genuinely disputed," or that under the undisputed facts, the respondents were not entitled to judgment as a matter of law. *Id.* Here, there is no dispute as to the underlying facts. The dispute is over what interpretation to give to the applicable provisions of § 365 of the Code in determining whether the respondents were entitled to judgment as a matter of law.

In contending that the master lease, sublease, and sub-sublease were terminated when the master lease and sublease were rejected by Food Barn in its bankruptcy proceeding, the appellant relies on § 365(d)(4) of the Code which provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee[3] does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such

---

**2.** All rule references are to the Missouri Rules of Civil Procedure (1998), unless otherwise indicated.

**3.** For the purposes of this section, a trustee is defined to include a debtor in possession in a Chapter 11 case, such as Food Barn here. 11 U.S.C. § 1107(a).

nonresidential real property to the lessor. 11 U.S.C. § 365(d)(4). Because Food Barn was required to surrender possession of the property when it rejected the master lease in its bankruptcy proceeding, the appellant argues that it was necessarily terminated, as opposed to being breached, entitling it to possession of the property. The respondents, however, argue that the rejection by Food Barn of its master lease constituted a mere breach thereof which had no effect on its continuing viability. In so arguing, they rely specifically on § 365(g) of the Code which provides:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> > (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title, immediately before the date of the filing of the petition. . . .

11 U.S.C. § 365(g). From this, they argue that, because the rejection of the master lease constituted a breach thereof, and not a termination, their right to possess the property remained intact.

The first issue we must decide, in determining whether the trial court erred in granting summary judgment to the respondents, is whether the rejection of the master lease by Food Barn terminated it for all purposes or whether it constituted a mere breach thereof. If we find that Food Barn's rejection of the master lease resulted in its termination, our inquiry would end as the termination of the master lease would also terminate all of the rights and obligations thereunder, including the respondents' right to possess and sublet the property. If, however, we conclude that the rejection of the master lease constituted merely a breach thereof, we must then determine the effect of this breach on the respective possessory rights of the parties. Because our research has uncovered no cases decided by our state appellate courts that have dealt with this precise issue, we will look to the decisions of the federal bankruptcy courts, which have addressed the issue, as being persuasive. *See Sedalia # 200 Sch. Dist. v. Missouri Comm'n on Human Rights*, 843 S.W.2d 928, 930 (Mo.App.1992) (finding that Missouri courts may defer to federal cases construing claims under federal law); *R.T. French Co. v. Springfield Mayor's Comm'n on Human Rights and Community Relations*, 650 S.W.2d 717, 721 (Mo.App.1983) (finding that Missouri courts may regard, as persuasive, federal decisions implementing and interpreting federal statutes).

The issue of the effect of the rejection of an unexpired lease in a bankruptcy proceeding has generated "starkly conflicting opinions among the bankruptcy courts." *Eastover Bank for Savings v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1080 (5 th Cir.1994). Many courts have agreed with the appellant that the surrender obligation of § 365(d)(4), which terminates the debtor's right to possess the leasehold property, must necessarily terminate the lease as well.[4] Other courts have agreed with the respondents that the rejection of a lease constitutes a mere breach of the lease.[5] After reviewing

---

4. *See, e.g., Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1080–81 (9 th Cir.1989); *Tebo v. Elephant Bar Restaurant, Inc. (In re Elephant Bar Restaurant, Inc.)*, 195 B.R. 353, 356 (Bankr.W.D.Pa.1996); *In re Carlton Restaurant, Inc.*, 151 B.R. 353, 356 (Bankr. E.D.Pa.1993); *In re 6177 Realty Assocs., Inc.*, 142 B.R. 1017, 1019 (Bankr.S.D.Fla.1992); *In re Giles Assocs., Ltd.*, 92 B.R. 695, 698 (Bankr.W.D.Tex.1988); *In re Gillis*, 92 B.R. 461, 465 (Bankr.D.Haw.1988); *In re Bernard*, 69 B.R. 13, 15 (Bankr.D.Haw.1986); *In re Hawaii Dimensions, Inc.*, 39 B.R. 606, 608 (Bankr.D.Haw.1984).

5. *See, e.g., In re Austin Dev. Co.*, 19 F.3d at 1083; *Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.)*, 900 F.2d 1184, 1191 (8th Cir.1990); *CASC Corp. v. Milner (In re Locke)*, 180 B.R. 245, 260 (Bankr.C.D.Cal. 1995); *In re Tri–Glied, Ltd.*, 179 B.R. 1014, 1018 (Bankr.E.D.N.Y.1995); *In re Arden &*

these cases and the language of § 365, we find the logic and reasoning of the latter cases, holding that the rejection of an unexpired lease constitutes a breach of the lease, not a termination, to be more persuasive.

The courts which have determined that rejection equals termination recognize that rejection of a lease constitutes a breach of the lease. *See, e.g., In re 6177 Realty Assocs., Inc.,* 142 B.R. 1017, 1019 (Bankr. S.D.Fla.1992). However, they conclude that because § 365(d)(4) requires immediate surrender of the property, the deemed rejection of a lease pursuant to this section constitutes a breach which is so substantial and serious that Congress must have intended such a rejection to terminate the lease for all purposes. *Id.* Section 365, however, "offers no textual support for equating 'breach plus surrender' with 'termination.'" *In re Austin Dev. Co.,* 19 F.3d at 1083. The word "termination" does not appear in § 365(d)(4). *Id.;* 11 U.S.C. § 365(d)(4). Section 365(g), however, specifically provides that the rejection of an unexpired lease constitutes a "breach" of the same. 11 U.S.C. § 365(g)(1). Further, when Congress intended to authorize the termination of a lease, it used that term specifically as in 11 U.S.C. § 365(h)(1)(A) which authorizes a lessee to terminate a lease upon rejection by a debtor-lessor. *In re Austin Dev. Co.,* 19 F.3d at 1082. "The doctrine of rejection was created to enable bankruptcy estate fiduciaries to free the estates under their control from the onerous obligations of ... [unexpired] leases. To accomplish that goal, it is not necessary to conclude that rejection of ... [unexpired] leases results in the extinguishment of those ... leases." *CASC Corp. v. Milner (In re Locke ),* 180 B.R. 245, 260 (Bankr.C.D.Cal. 1995). Adopting the reasoning of these courts, we hold that the rejection by Food Barn of the master lease constituted a mere breach of the same which did not

result in the termination or extinguishment of the covenants, rights, or remedies created by the master lease or of any property interests appurtenant thereto. *Id.*

Having found that the rejection of the master lease was a mere breach of the same which did not result in its complete termination, we must now determine the effect of this breach. The appellant argues that the rejection of the master lease by Food Barn terminated its right to possess the property pursuant to § 365(d)(4). And, because the respondents' right to possess the property was derived from Food Barn, the appellant argues that their possessory rights were also necessarily terminated, even assuming the lease itself survived. The respondents concede that, under the Code, Food Barn lost the right to possess the property when it rejected the master lease. However, they argue that this rejection constituted only a minor, technical breach which did not result in harm to the appellant. As such, they argue that there was no default under the lease which would terminate their lease with Food Barn or affect their right to possess the property. The issue then for us to decide is whether the respondents, as sublessees, can assert a possessory right under their sublease against the appellant even though Food Barn, their sublessor, no longer had any such right.

 Because both the master lease and sublease were rejected, neither Food Barn nor its bankruptcy estate had any further interest in the ultimate disposition of the property. *In re Dial–A–Tire, Inc.,* 78 B.R. 13, 16 (Bankr.W.D.N.Y.1987). As such, the respective rights of the appellant and the respondents against each other were questions of state law. *Keaty & Keaty v. Loyola Assocs. (In re Stalter & Co., Ltd.),* 99 B.R. 327, 330 (E.D.La.1989). Under Missouri law, a lease is both a

*Howe Assocs., Ltd.,* 152 B.R. 971, 974 (Bankr. E.D.Cal.1993); *Blue Barn Assocs. v. Picnic 'N Chicken, Inc. (In re Picnic 'N Chicken, Inc.),*

58 B.R. 523, 526 (Bankr.S.D.Cal.1986); *In re Storage Tech. Corp.,* 53 B.R. 471, 474 (Bankr. D.Colo.1985).

contract and conveyance. *C & J Delivery, Inc. v. Vinyard & Lee & Partners, Inc.,* 647 S.W.2d 564, 568 (Mo.App.1983). It is a species of contract which creates an estate in land subject to any conditions imposed by the parties. *Id.* Covenants in a lease are mutually independent unless expressly made dependent by a clause in the lease. *Id.* If no such clause is included in the lease, a breach of a covenant by either party neither terminates the lease nor excuses the performance of the innocent party. *Id.* As such, we must look to the terms of the master lease and sublease to determine whether either contains a clause which provides for the termination of the lease upon a breach, general or specific.

▆▆▆ The sublease contained the following termination clause:

> Sublessee agrees that in the event the Master Lease is *terminated* before expiration of the term of this Sublease, then this Sublease and all rights and obligations of the parties hereto shall also terminate as of the date of the termination of said Master Lease.

(Emphasis added.) The appellant argues that this clause terminated the sublease, thereby terminating the respondents' right to possess the property. However, this clause by its terms applies only where the master lease is already terminated. As discussed, *supra*, the rejection of the leases here constituted a breach of the same and not a termination. As such, it does not work to dispossess the respondents of their interest in the property. The master lease does contain the following clause:

> If lessee shall be in default for more than twenty (20) days after receipt of lessor's notice specifying such default, lessor may declare the term ended and re-enter the leased premises with or without process of law . . .

However, the lease does not specify what type of default will allow the lessor to re-enter the premises. As such, there is no provision in either the master lease or the sublease which would have operated to terminate the master lease or give the

appellant the right to retake possession of the property under the circumstances presented here. *C & J Delivery, Inc.,* 647 S.W.2d at 568. Thus, we must look to the general law of contracts to determine whether the respondents retained the right to possess the property despite the breach of the master lease by Food Barn.

▆▆▆ Generally, to recover for breach of a contract, the party seeking to recover must show that the alleged breach was substantial. *Westerhold v. Mullenix Corp.,* 777 S.W.2d 257, 260 (Mo.App.1989). An immaterial breach will not give rise to an action for damages or permit the innocent party to terminate or cancel the contract. *Blythe v. Blythe,* 586 S.W.2d 393, 396 (Mo.App.1979). Further, the party seeking to recover must demonstrate that it sustained some damage resulting from the breach. *McGraw v. Andes,* 978 S.W.2d 794, 802 (Mo.App.1998). The appellant here has not demonstrated that Food Barn's rejection of the master lease constituted a substantial breach of the lease nor has it demonstrated that it was damaged thereby. It is undisputed that Hobby Lobby has occupied the property since 1990 and that the appellant has not been left with a vacant space in its shopping center. It is further undisputed that Hobby Lobby and the respondents have been current in all rent payments. As such, the appellant has received all of the benefits from the lease for which it bargained. Because the appellant has failed to demonstrate that the rejection of the master lease was a substantial breach or that it was damaged thereby, it has failed to establish that the rejection of the master lease by Food Barn terminated the respondents' right to remain in possession of the property. *Blythe,* 586 S.W.2d at 396.

For the reasons stated, we find that, under the undisputed facts, neither the master lease, the sublease, nor the respondents' possessory rights pursuant thereto were terminated by Food Barn's rejection

of the master lease and sublease in its bankruptcy proceeding. Hence, the trial court did not err in granting summary judgment to the respondents on their petition for declaratory judgment declaring that they were entitled to remain in possession of the property.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in entering summary judgment in favor of the respondents, declaring that their rights to the property under their sublease were not terminated, because, under the undisputed facts, they were not entitled to judgment as a matter of law in that Food Barn's rejection of the master lease in its bankruptcy proceeding terminated not only the master lease, but all subleases thereunder, pursuant to state law and the terms of the sublease. Because we have already addressed the effect of Food Barn's rejection of the master lease on the continuing viability of the sublease and the respondents' right to remain in possession of the property under state law and the terms of the sublease in deciding Point I, *supra*, this issue in this point has, in effect, already been decided against the appellant.

Point denied.

### Conclusion

The summary judgment of the circuit court declaring that the respondents were entitled to remain in possession of the property is affirmed.

All concur.