In the
Missouri Court of Appeals
Western District


BELTON CHOPPER 58, LLC,

                **Respondent,**

v.

NORTH CASS DEVELOPMENT, LLC,

                **Appellant.**

**WD78763**

**OPINION FILED:**

**MAY 24, 2016**

**Appeal from the Circuit Court of Cass County, Missouri**
**The Honorable William B. Collins, Judge**

**Before Division Three: Gary D. Witt, P.J., James E. Welsh, Anthony Rex Gabbert, JJ.**

North Cass Development, LLC ("North Cass") appeals the trial court's grant of summary judgment in favor of Wells Fargo, N.A., as Trustee for the Registered Holders of GE Business Loan Pass-Through Certificates, Series 2007-1 ("Wells Fargo"). In the underlying suit, Wells Fargo sought declaratory judgment against North Cass quieting title to a piece of commercial real property located in Cass County, Missouri; North Cass argued that it maintained a right of first refusal on the property granted by the property's prior owner, Bowes Investments, LLC ("Bowes").[1] On appeal, North Cass contends that the trial court erred in interpreting the

---

[1] Wells Fargo filed the underlying suit and was originally named as Respondent in this appeal. Wells Fargo subsequently sold the property in question to Belton Chopper 58, LLC ("Belton Chopper"); consequently, Belton Chopper was substituted as Respondent. "Wells Fargo," "Belton Chopper," and "Respondent" are used interchangeably throughout this opinion.

substantive law regarding rights of first refusal, as well as in interpreting the contract that granted North Cass the right of first refusal. We affirm the trial court's decision.

## Facts & Background

In 2002, a commercial property dispute developed between two adjoining landowners, North Cass and Bowes. The two companies eventually reached a resolution in the following year, filing a Settlement and General Release Agreement on August 22, 2003 and a related Memorandum of Right of First Refusal on October 20, 2003 (collectively, the "Settlement Agreement" or "Agreement"). Among other things, the Settlement Agreement granted North Cass a right of first refusal on the property owned by Bowes.

Paragraph 5 of the Agreement set forth the procedure for exercising the right of first refusal. The language of that paragraph also established a limitation on the right of first refusal by stating: "Notwithstanding anything set forth herein, this right of first refusal is ineffective upon a sale of the Property by foreclosure or other involuntary sale." Paragraph 6 of the Agreement set forth conditions controlling termination of the right of first refusal. The language of that paragraph stated: "[The] right of first refusal continues in effect until the conveyance of the Property in fee simple to [North Cass] or to a third party pursuant to the right of first refusal described above."

In 2006, Bowes used its property as collateral to secure a loan with Wells Fargo. In conjunction with the loan, Bowes executed a deed of trust secured by the property in favor of Wells Fargo. Wells Fargo appointed a trustee to administer the deed of trust. In 2013, Bowes defaulted on the loan and Wells Fargo requested that its trustee conduct a non-judicial foreclosure on the property. On March 4, 2013, the trustee sold the property to Wells Fargo as the highest bidder at the resulting foreclosure sale.

2

Following the foreclosure sale, Wells Fargo made several unsuccessful attempts to sell the property to various third parties; the sales fell through each time when prospective buyers discovered the 2003 Settlement Agreement and right of first refusal. Although it maintained that it was not required to do so, Wells Fargo sent a letter to North Cass on June 27, 2014 offering North Cass the preemptive right to buy the property according to the terms of Wells Fargo's latest sale contract. The letter additionally requested that North Cass expressly and unequivocally waive its right of first refusal if it did not wish to buy the property at that time. North Cass did not respond to this letter and Wells Fargo's sale fell through yet again.

On November 4, 2014, Wells Fargo filed suit against North Cass seeking a declaratory judgment granting it title to the property in fee simple absolute. In its petition, Wells Fargo made several arguments as to why the Settlement Agreement (and, therefore, the right of first refusal) was not binding upon it. First, Wells Fargo argued that the Agreement was not binding upon it whatsoever because Wells Fargo was not a party to the 2003 contract between North Cass and Bowes. Next, it argued that even if the Agreement was binding upon it, the right of first refusal was terminated upon the foreclosure sale as per the terms of Paragraph 5 of the Agreement. Third, Wells Fargo argued that even if the Agreement was binding upon it and the right did not terminate upon the foreclosure sale, the right expired when North Cass chose not to buy the property after receiving Wells Fargo's offer in June 2014. Finally, Wells Fargo argued in the alternative that the right of first refusal was void *ab initio* because it violated the rule against perpetuities. Wells Fargo ultimately moved for summary judgment against North Cass and the trial court granted that motion on April 13, 2015.

North Cass filed its notice of appeal in this case on June 30, 2015, naming Wells Fargo as Respondent. However, Wells Fargo successfully sold the property to Belton Chopper 58, LLC

3

("Belton Chopper") sometime between April and September 2015. Accordingly, this Court sustained a motion to substitute parties filed on September 10, 2015 and Belton Chopper was substituted as Respondent. This appeal follows.

## Standard of Review

We review the trial court's grant of summary judgment *de novo*. *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supp. Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). We will affirm a grant of summary judgment if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The non-movant has the burden of showing that there remains a genuine issue of material fact. *Id*. at 381-82. We review the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all reasonable inferences that may be drawn from the record. *Id.* at 381.

The interpretation of a contract is a question of law which we review *de novo*. *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo. App. W.D. 2001). When we conduct a *de novo* review, "the judgment may be affirmed on an entirely different basis than that presented to the trial court" and "can be affirmed on any theory that is supported by the record." *Hensley-O'Neal v. Metro. Nat. Bank*, 297 S.W.3d 610, 614 (Mo. App. S.D. 2009) (internal quotations omitted).

## Analysis

In its second[2] Point on appeal, North Cass contends that the trial court erred in granting Respondent summary judgment in that the court misinterpreted the terms of the Settlement Agreement regarding the right of first refusal becoming "ineffective" upon sale of the property

---

[2] We address North Cass's second Point first because we find that Point to be dispositive in our analysis. As such, we do not address North Cass's first point in this opinion.

4

by foreclosure. Specifically, North Cass contends that the court misapplied the law of contract interpretation by interpreting the word "ineffective" to mean "terminated" because that is not the ordinary meaning of the word "ineffective." We affirm the trial court's judgment.

As with all questions of contract interpretation, we first attempt to "ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). We determine this intent based upon the contract language alone unless its terms are ambiguous. *Id.* "An interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected." *Tri-Lakes Newspapers, Inc. v. Logan*, 713 S.W.2d 891, 894 (Mo. App. S.D. 1986). "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Foley Co. v. Walnut Assoc.*, 597 S.W.2d 685, 689 (Mo. App. W.D. 1980) (quoting Restatement 2d of Contracts § 229(a)).

Here, Paragraph 5 of the Settlement Agreement signed by Bowes and North Cass sets forth the procedure for the exercise (and non-exercise) of the right of first refusal. Paragraph 5 states that the right of first refusal may be exercised by North Cass "if [Bowes], its successors or assigns, and a bona fide purchaser agree on the basic business terms for the purchase of all or any part of the Property[.]" To exercise this preemptive right, Paragraph 5 requires North Cass to inform Bowes of its desire to buy the property within ten business days of receiving notice of a potential sale; if North Cass did not choose to exercise the right within ten business days, Bowes was free to proceed with the sale.

Paragraph 5 also includes a clause stating that the right of first refusal "is ineffective upon a sale of the Property by foreclosure or other involuntary sale." A plain and ordinary

5

interpretation of this clause is that, in the case of a foreclosure or other involuntary sale of the property to a third party, North Cass would not be entitled to its preemptive right of purchase and the property could be sold without first offering it to North Cass.[3] Furthermore, a plain and ordinary interpretation of this clause is that the right of first refusal was effectively terminated upon the foreclosure sale to Wells Fargo. Where a contractual right is expressly deemed "ineffective" upon the occurrence of a certain type of sale (here, foreclosure and involuntary sales), it would be illogical and extraordinary to enforce that right upon subsequent sales following that type of sale. If such an interpretation were adopted, North Cass could excuse itself from bidding at a foreclosure or other involuntary sale, yet continue to exercise the right of first refusal in connection with later *voluntary* sales; North Cass would thereby be permitted to extend the right of first refusal almost indefinitely, which would render the termination provisions in Paragraph 6 superfluous.[4]

Accordingly, because we seek to avoid contractual interpretations which would leave one or more parts of a contract "unreasonable, unlawful, or of no effect," *Foley Co.*, 597 S.W.2d at 689, we find that North Cass's right of first refusal was extinguished upon the foreclosure sale and Wells Fargo was entitled to convey the property to any subsequent buyer without first offering North Cass the preemptive right to buy.

---

[3] We note that, in its response to Wells Fargo's summary judgment motion, North Cass did not dispute that the right was ineffective as to the foreclosure sale, and the trial court agreed to this interpretation in its summary judgment ruling. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supp. Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

[4] Paragraph 6 of the Settlement Agreement sets forth conditions that control the termination of North Cass's right of first refusal. Paragraph 6 of the Settlement Agreement provides that the right of first refusal will *not* continue in effect—*i.e.*, it will effectively be terminated—in the event of: (1) a sale to North Cass pursuant to the right of first refusal; or (2) conveyance of the property "to a third party pursuant to the right of first refusal described above."

6

## Conclusion

Upon review of the record before us, we find that the trial court did not err in granting summary judgment to Respondent. North Cass had no right of first refusal once the right was terminated upon the foreclosure sale of the property, and Respondent was therefore entitled to possession of the land in fee simple absolute, free and clear of any prior interest held by North Cass. The trial court's judgment is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.

7