**Elizabeth A. ANDES, Respondent,**

v.

**Ann N. DICKEY, Appellant.**

**WD 80135**

Missouri Court of Appeals,
Western District.

Opinion filed: August 29, 2017

---

Bradley A. Constance, Independence, for Respondent.

Adam S. Davis, Kansas City, for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

## EDWARD R. ARDINI, JR., JUDGE

Ann Dickey ("Dickey") appeals the judgment of the Circuit Court of Jackson County in favor of Elizabeth Andes ("Andes") on Dickey's claim for breach of contract and Andes's claim for specific performance based on the parties' written agreement regarding a jointly-owned residence. On appeal, Dickey argues that the trial court erred in concluding that the buyout provision in the agreement was satisfied, that she no longer had an interest in the home, and that Andes's obligations under the agreement had terminated. Dickey's first point is granted, and the judgment is reversed in part and remanded for additional proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

Andes and her daughter, Dickey, decided to establish a community home and jointly purchased a residence in May 2014 for $380,000. Andes contributed a down payment of $76,400, Dickey contributed $2,500 earnest money, and the remaining balance was financed through a mortgage. Both moved into the home and quickly realized that it suffered from several previously unknown defects, including severe water leaks, dry rot, termite damage, and plumbing issues, which required extensive renovations and repairs.

Approximately one year after the purchase, Andes vacated the home following an incident with Dickey's boyfriend, who frequently visited the home and helped with the renovations. Andes and Dickey decided that they would complete the renovations and place the home on the market. They secured a home equity loan (line of credit) in the amount of $87,417 to finance the renovations, which were to be overseen by Dickey. Both Andes and Dickey were listed as obligors on the line of credit.

During this time, Andes and Dickey also negotiated an agreement, without the assistance of legal counsel, relating to the home. The agreement, signed on June 17, 2015, imposed duties and responsibilities on both Dickey and Andes. Because Andes's relationship with Dickey and the others living in the home had deteriorated, the agreement mandated that Andes give 24-hour notice prior to coming to the home, forward her mail to a new address, and remove all of her belongings by the end of July.

The agreement allowed Dickey to continue to live in the home and tasked her with supervising the renovations. Dickey's responsibilities regarding the renovations included providing a monthly accounting, paying bills, and supplying Andes with weekly summaries. Andes was to pay $1,000 per month toward the mortgage and other bills, compensate Dickey and one of the other housemates at an hourly rate for administrative work and labor, pay $3,000 per month and travel expenses to Dickey's boyfriend for his work on the renovations, and provide a yearly bonus of $1,500 to Dickey, her boyfriend, and the housemate assisting with the renovations.

The agreement also stated that Andes would "buy [Dickey] out of the home" for

---

1. The evidence is viewed "in the light most favorable to the trial court's judgment[.]" *Holm v. Wells Fargo Home Mortgage, Inc.*, 514 S.W.3d 590, 596 (Mo. banc 2017) (citation omitted).

$66,875.50, an amount arrived at through a calculation set forth in the agreement. The buyout amount was to be paid by Andes to Dickey in $2,000 monthly installments until satisfied (approximately thirty-three monthly payments). Upon the sale of the home, Andes, Dickey, and two other individuals would equally share "any proceeds above and beyond [Andes]'s contributions[.]"

■ After obtaining the line of credit and signing the agreement, Andes and Dickey continued to conflict. Andes requested a list of the five top priority projects and timeline for their completion and also inquired into whether the renovations could be completed within the line of credit. Dickey, believing that the line of credit was only the first of several financing steps and unsure about the highest priority projects because she continued to discover defects, did not respond. The parties also clashed over Andes's alleged failure to abide by provisions in the agreement such as the 24-hour notice requirement. When Dickey insisted that Andes follow the agreement, Andes threatened to terminate Dickey's access to the funds in the joint line of credit. Andes testified that she suggested that Dickey accept the money remaining in the line of credit in satisfaction of the buyout but acknowledged that Dickey did not agree to her proposal.[2]

Dickey, in response to Andes's threat to terminate her access to the funds in the line of credit, which were needed to complete the renovations to the home, withdrew the remaining balance of $69,765.67. She established a new account in her name into which she deposited the funds so that they would continue to be available to pay for the ongoing renovations. Upon discov-

ering that the funds had been withdrawn from the line of credit, Andes notified Dickey by email that she could keep the withdrawn money as satisfaction of the buyout. Andes further stated that she wanted sole ownership of the home, would assume and pay the first and second mortgages, and demanded Dickey vacate the home within thirty days. By this time, Andes had paid $3,000 toward the buyout amount. Thus, the $69,765.67 from the line of credit exceeded the balance of $63,875.50 owed on the buyout. However, Dickey did not accept this proposal, responding that she would continue to use the funds to renovate the property pursuant to their written agreement.

Despite Dickey's rejection of the proposal, Andes reiterated her position that Dickey had been paid in full and stated that she would be initiating legal proceedings. Andes filed the present lawsuit on August 26, 2015, bringing claims for specific performance (alleging that Dickey received full performance under the buyout provision of the agreement when she withdrew the funds from the line of credit and seeking a fully-executed warranty deed conveying Dickey's undivided one-half interest in the property to Andes), breach of contract, and partition. Dickey answered and counter-claimed for specific performance and breach of contract.

At trial, Dickey proceeded on her claim for breach of contract, which was tried to a jury, and Andes proceeded on her claim for specific performance seeking conveyance of Dickey's interest in the home based on satisfaction of the buyout provision, which the trial court reserved for its own determination. The jury found in favor of Andes on Dickey's breach of con-

**2.** Dickey denies that this first proposal was made but testified that she would not have accepted such a proposal. However, we "accept as true the evidence and inferences fa-

vorable to the judgment while disregarding contrary evidence." *Holm,* 514 S.W.3d at 596 (citation omitted).

tract claim. The trial court found in favor of Andes on her claim for specific performance, determining that the buyout provision had been satisfied. The court issued its judgment in favor of Andes on both claims, giving Andes title to and possession of the home and terminating Andes's obligations under the parties' agreement. Dickey filed post-trial motions and now appeals the judgment of the trial court.

## STANDARD OF REVIEW

 Dickey alleges in her first point on appeal that the trial court erred in finding that Andes had bought out Dickey's interest in the home and, in her other points, challenges the effect of the alleged buyout on the remaining provisions in the agreement. Whether the buyout provision was satisfied was an issue decided by the trial court, and its "judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applied the law." *Holm*, 514 S.W.3d at 596 (citation omitted).[3] "The interpretation of a contract is a question of law which we review *de novo*." *Belton Chopper 58, LLC v. North Cass Development, LLC*, 496

S.W.3d 529, 532 (Mo. App. W.D. 2016) (citation omitted).

## DISCUSSION

Although this case involved multiple claims asserted by both parties against the other, the issue before us is relatively narrow—did the trial court err in finding that Andes satisfied the buyout provision and ordering specific performance. To resolve this issue, we must "ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Id.* (citation omitted).

 The buyout provision states "[Andes] will buy [Dickey] out of the home . . . The buy-out [sic] will be $2000/month until buy-out [sic] is complete, starting June 2015[,]" and calculates the buyout amount to be $66,875.50. Andes argues that Dickey's actions relating to the withdrawal of the funds from the line of credit constituted an accelerated payment in full satisfaction of the buyout provision contained in the agreement. Dickey counters that the funds withdrawn from the line of credit did not belong to Andes, as both Dickey and Andes were co-obligors on the

**3.** Andes argues that the jury decided whether the buyout provision was satisfied based on Instruction 8, "Your verdict must be for [Andes] if you believe that [Dickey] received the [buyout] payment of $66,875.50," and because the verdict was in favor of Andes. Instruction 8 was presented as a converse to the breach of contract instruction. The judgment states that the jury tried only the breach of contract claim and that the trial court entered its judgment on the specific performance claim "consistent with the verdict/factual findings made by the jury." Although the verdict on the breach of contract claim must have been for Andes if the jury believed that Dickey received the buyout payment, the jury could have also reached the same verdict on other grounds, such as concluding that Andes did not fail to perform her obligations under the agreement or that Dickey was not dam-

aged. Thus, in determining whether Dickey received the buyout payment, we decline to apply the standard of review applicable to a jury-tried case as urged by Andes and instead apply the standard of review applicable to a bench-tried judgment. Regardless of the standard of review applied, the conclusion that a buyout occurred pursuant to the agreement was against the weight of the evidence and requires reversal. *See Holm*, 514 S.W.3d at 596 (Trial court's judgment will be reversed if "there is no substantial evidence to support it" or "it is against the weight of the evidence." (citation omitted)); *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 769 (Mo. banc 2010) (A jury's verdict will be reversed "for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." (citation omitted)).

line of credit; that the withdrawn funds were used for the intended purpose of paying for renovations and other expenses related to the home; and that Andes's unilateral decision to assume financial responsibility for repayment of the line of credit was a modification to their agreement that was not agreed to by Dickey and, even if agreed to by Dickey, violated the statute of frauds.

Although the agreement was drafted without the assistance of legal counsel and lacked the indicia of formality normally expected in an agreement of this type, the specificity of its terms confirms that the parties entered into a binding, enforceable contract. *See Fedynich v. Massood*, 342 S.W.3d 887, 891 (Mo. App. W.D. 2011) ("The nature and extent of the contract's essential terms must be certain or capable of certain interpretation. In other words, the terms must be 'sufficiently definite to enable the court to give it an exact meaning.'" (citations omitted)); *Ketcherside v. McLane*, 118 S.W.3d 631, 635 (Mo. App. S.D. 2003) (stating the essential elements of a contract, including mutuality of agreement, and that the term "implies a mutuality of assent or a meeting of the minds to the essential terms of a contract"). Relevant to this appeal, the agreement established the rights and obligations of the parties relating to the buyout—Dickey would relinquish her undivided one-half interest in the home to Andes upon Andes's payment of $66,875.50 to Dickey. The agreement further specified the manner by which the payment of the buyout was to be accomplished—Andes was to make monthly payments of $2,000.00 to Dickey until paid in full.

■ The record reflects that the buyout provision was clearly not satisfied in the manner contemplated by the agreement, as Andes did not make the necessary number of monthly payments. Nevertheless, Andes argues, and the trial court found, that a series of actions and inactions related to the line of credit accomplished the buyout. Specifically, the trial court found that the buyout was completed when (a) Dickey withdrew $69,765.67 from the line of credit; (b) Andes advised Dickey that the withdrawal constituted payment in full of the buyout; (c) Andes agreed to pay the line of credit in full; and (d) Dickey failed to return the withdrawn funds to the line of credit account or deposit the funds into a joint account bearing the names of both Dickey and Andes.

■ We disagree. As discussed more thoroughly below, Andes's offer to satisfy the buyout by assuming sole financial responsibility for repayment of the line of credit if Dickey retained the withdrawn funds as her own was a deviation from, or modification of, the terms of the parties' agreement. To effectively modify the agreement, Dickey's acceptance of Andes's offer was required. However, both parties testified that such acceptance did not occur. Moreover, even if Dickey's inaction (failure to return the withdrawn funds to the line of credit account or deposit the funds into an account jointly owned with Andes) could be construed as an acceptance by Dickey of Andes's offer, such a modification would be unenforceable because it was not in writing as required by the statute of frauds.

### Lack of Agreement to Modify

Under the parties' agreement, the buyout was to be satisfied by Andes's payment of a sum certain to Dickey through a series of monthly installments. Likely due to the souring relationship between the parties and seemingly endless problems with the home and need for additional funds, Andes sought to end the parties' relationship as it related to the home by accelerating the completion of the buyout. She proposed to

accomplish this result by allowing Dickey to retain the funds that she had withdrawn from the line of credit, the amount of which exceeded the balance owed by Andes toward the buyout.

However, the funds that had been withdrawn from the line of credit by Dickey did not belong to Andes, as both Andes and Dickey were co-obligors on that account and were jointly responsible for the repayment of any withdrawn funds. As a result, Andes's effort to satisfy the buyout was not grounded on the payment of funds by Andes to Dickey as required by the parties' agreement but was instead based on Andes assuming Dickey's liability under the line of credit. This is materially different from the terms of the parties' agreement, which did not provide for alternative methods of satisfaction. Andes's proposal thus constituted a modification to the parties' original agreement and had to be accepted by Dickey to be enforceable. *Harms v. Harms*, 496 S.W.3d 534, 541 (Mo. App. W.D. 2016) ("When the parties modify an existing contract they are making a new contact; it is only enforceable if there is mutual assent and consideration." (citation omitted)).

■ On the issue of acceptance, both parties unequivocally testified that Dickey rejected Andes's offer to assume sole financial responsibility for the repayment of the line of credit.[4] Nevertheless, the trial court seemingly disregarded this evidence and found that Dickey accepted the buyout when she "failed to return the money to the credit line account or into an account in the joint names of plaintiff and defendant." This acceptance by implication, created by the trial court based on Dickey's failure to return the withdrawn funds, ignores that Dickey had authority to both withdraw and possess the funds from the line of credit and that Dickey used the funds withdrawn from the line of credit for renovations and other expenses related to the home as contemplated by the parties. There is simply no basis to find that Dickey had an obligation to return the withdrawn funds or to conclude that the failure to do so constituted an acceptance of Andes's offer.

### Statute of Frauds

■ Finally, even if we were to find that Dickey accepted Andes's offer, the buyout provision pertained to an interest in land and, as written, was not to be performed within one year and thus was subject to the requirements of the statute of frauds. § 432.010, RSMo Supp. 2005;[5] *Holt v. Story*, 642 S.W.2d 394, 396 (Mo. App. E.D. 1982) ("The statute of frauds ... provides that contracts for the conveyance of real property and contracts that are not to be performed within one year must be in writing."). The statute of frauds requires that any modification to such an agreement be in writing and signed by the parties to be enforceable. *Melson v. Traxler*, 356 S.W.3d 264, 273 (Mo. App. W.D. 2011) ("[A]ny modification to a contract that falls within the statute of frauds must

4. Because we conclude that assumption of the line of credit did not satisfy the buyout provision as written and that the parties did not reach an agreement to modify the agreement, we need not address whether the parties' original agreement allowed for a lump sum payment *in lieu of* monthly installments.

5. The statute specifically provides:

No action shall be brought ... upon any contract made for ... an interest in or concerning [lands, tenements, or hereditaments] ... or upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith ...

also be in writing to be enforceable." (citation omitted)); *Holt*, 642 S.W.2d at 396 ("The alleged oral agreement modified the original contract. If a contract is subject to the statute of frauds, any modification of that contract must also be in writing." (citations omitted)). Notwithstanding the fact that we find Dickey never accepted Andes's offer to modify the parties' original agreement, such a finding becomes secondary as there is no dispute that no written agreement signed by the parties memorializing the modification was executed and, thus, regardless of whether Dickey accepted the offer by words or actions, there exists no modification to enforce.

In sum, the buyout provision was not satisfied and the trial court erred in ordering specific performance because (1) Dickey did not accept Andes's offer whereby Dickey would retain the withdrawn funds as her own and Andes would assume sole financial responsibility for repaying the line of credit as performance of Andes's obligations under the buyout provision; and (2) Andes's proposal would have constituted a modification to the parties' agreement and, if accepted by Dickey, was required under the statute of frauds to be in writing and signed by the parties to be enforceable.

Point I is granted. Because the buyout provision was not satisfied, we need not address Dickey's remaining points on appeal, as each is premised on the buyout having been fully performed by Andes. Point II and Point III are deemed moot and are hereby dismissed.

## CONCLUSION

The judgment as it relates to Andes's specific performance claim is reversed. The case is remanded with directions to enter judgment in favor of Dickey on that claim and for further proceedings consistent with this opinion.

All concur.

