

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| JOYCE ELAINE BOZARTH, | ) | |
| | ) | |
| Appellant, | ) | WD84827 |
| | ) | |
| v. | ) | OPINION FILED:  July 5, 2022 |
| | ) | |
| EDGAR FORSHE BOZARTH, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Joel P. Fahnestock, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge and
W. Douglas Thomson, Judge

Joyce Bozarth ("Wife") appeals the judgment of the Circuit Court of Jackson

County, Missouri ("trial court"), granting summary judgment to Edgar Bozarth

("Husband") and awarding him attorney's fees in the amount of $531,482.50 and costs in

the amount of $5,602.60, with interest at 9% per annum.  On appeal, Wife claims that the

trial court erred in:  Point I, granting Husband's motion for summary judgment; Point II,

denying her motion for summary judgment; Point III, awarding Husband attorney's fees

and costs, and denying her attorney's fees, because the trial court erroneously found that

Husband had not sold or liquidated various corporate entities referenced in the parties' separation agreement and divorce decree, the liquidation of which triggered Husband's obligation to pay Wife a portion of the proceeds; and Point IV, as an alternative to Point III, the trial court's award of Husband's attorney fees was an abuse of discretion because the awarded fees was unreasonable and excessive. We reverse the judgment of the trial court and remand for entry of a judgment in Wife's favor and for calculation of Wife's damages and reasonable attorney's fees and costs.

### Factual and Procedural Background

Wife and Husband separated in 2002, entering into a Separation Agreement and Property Settlement ("the Agreement"). The Agreement awarded Husband a 100-percent interest in eight various business entities, including the three real estate holding companies at issue herein (MPP Acquisitions LLC, Illinois MPP LLC, and Texas MPP Corporation (collectively "Marital Entities")), whose only purpose was to hold real properties used in Husband's aluminum anodizing business, and whose only meaningful assets were the real estate. In exchange for Husband receiving 100 percent of the Marital Entities, the Agreement provided that, if any of the Marital Entities were sold or liquidated, the "total net sales proceeds" would be awarded to Husband and Wife according to a step-down schedule, with, essentially, Husband receiving all total net sales proceeds up to $425,000; Husband and Wife splitting equally all total net sales proceeds over $425,000 but less than $1.8 million; Husband receiving seventy-five percent and Wife receiving twenty-five percent of all total net sales proceeds over $1.8 million but less than $4 million; and

2

Husband receiving eighty-five percent and Wife receiving fifteen percent of all total net sales proceeds over $4 million.

In 2016, Husband caused the three Marital Entities at issue to sell the real estate held by each company to Sterling Office and Industrial Properties, L.L.L.P.[1] ("Sterling"), a real estate investment trust based in North Dakota. The combined purchase price of the real estate held by the Marital Entities was over seven million dollars. The Marital Entities did not retain the proceeds from the sale; bank loans on the properties were repaid, and the remainder went either to Husband or to other companies Husband owned, where much of it was used as working capital for his businesses. The real estate was then leased back from Sterling to MPP Group of Companies, Inc., an entity owned by Husband but that was not subject to the Agreement.[2] Husband personally paid income tax of approximately one million dollars on the proceeds of the sale of the real estate by the Marital Entities. Wife did not receive any of the proceeds from the sale of the real estate by the Marital Entities. The Marital Entities that formerly held the real property and that were subject to the Agreement were not formally dissolved, but they now hold virtually no assets, produce no income, and do no business. The LLC structures of the Marital Entities were left in place because Husband believed "the corporate veil" would shield him from personal liability in case the properties had environmental issues from hazardous waste due to the aluminum

---

[1] Sterling Office and Industrial Properties, L.L.L.P. is listed as the "Buyer," but Dave Perkins, who testified on Sterling's behalf, stated that he was an asset manager for "Sterling Management." We will refer to these two entities, if they are in fact separate entities, collectively as "Sterling."

[2] The eight entities covered by the separation agreement are: MPP Acquisition Co, Inc.; MPP Management Co, Inc; Missouri MPP Corporation; Texas MPP Limited Partnership; Texas MPP Corporation; Arizona MPP Corporation; Illinois MPP LLC; and Illinois MPP Corporation.

3

anodizing performed on the properties. MPP Group of Companies, Inc., not the Marital Entities, was given a right of first refusal to purchase the real property from Sterling under certain circumstances.

After Wife learned that Husband had caused the real property owned by the Marital Entities covered by the Agreement to be sold, Wife brought an action against Husband for breach of contract.[3] Wife filed a motion for summary judgment, alleging that there were no material facts in dispute. The trial court granted summary judgment to Husband, who had not filed a motion for summary judgment. Therefore, this Court, on appeal, reversed the judgment of the trial court as an improper grant of summary judgment, expressing no opinion on the merits of the action. *Bozarth v. Bozarth,* 613 S.W.3d 868 (Mo. App. W.D. 2020). On remand, Husband and Wife each moved for summary judgment, and the trial court denied Wife's motion for summary judgment and granted Husband's motion for summary judgment as well as his request for attorney's fees. This appeal follows.

## Standard of Review

We review the trial court's grant of summary judgment *de novo*. *ITT Comm. Fin. Corp. v. Mid-Am. Marine Supp. Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "We will affirm a grant of summary judgment if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Belton Chopper 58, LLC v. N. Cass Dev. LLC*, 496 S.W.3d 529, 532 (Mo. App. W.D. 2016). "Generally, an order denying a party's

---

[3] Wife originally raised her claims in the marital dissolution case, claiming that Husband should be held in contempt for willfully violating the Agreement. Wife also claimed extrinsic fraud by Husband. The dissolution court declined to rule on Wife's motions, finding that the issue should properly be determined in this breach of contract action. This issue was not challenged by either party, and they appear to be in agreement to have the courts consider the claims under the breach of contract action.

4

motion for summary judgment is not a final judgment and is therefore not subject to appellate review." *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568 (Mo. App. W.D. 2011) (internal quotation omitted). "However, the denial of a motion for summary judgment may be reviewable when, as in this case, the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party." *Id.* (internal quotation omitted). "The interpretation of a contract is a question of law that we review *de novo*." *Belton Chopper*, 496 S.W.3d at 532.

**Analysis**

*Sale or liquidation of the business entities:*

Wife's first point on appeal involves the trial court's denial of her motion for summary judgment and her second point on appeal challenges the corresponding grant of Husband's motion for summary judgment; therefore, we will discuss these points together. Because Husband's and Wife's respective motions for summary judgment were "intertwined" in that they involved the same legal issue and there are no material facts in dispute, we review both summary judgment rulings. *Sauvain*, 339 S.W.3d at 568. Both motions for summary judgment turn on the issue of whether Husband's act of causing the Marital Entities to sell all of the real property that each of three holding companies was expressly formed to hold constitutes a "sale/liquidation" of the holding companies under the terms of the Agreement, triggering Husband's duty to divide the "net sales proceeds" of the companies between himself and Wife as set forth in the Agreement. We find that it does.

5

Husband argues to this court, as he did before the trial court, that he did not formally dissolve the holding companies.[4]  But the portion of the Agreement covering the Marital Entities does not require a dissolution of the entities, but rather a "sale/liquidation."  The parties *did* agree, two pages later in the Agreement, to "dissolve" another corporation they owned, Liberty Meadows, Corp.  Importantly, they did not choose to use the word "dissolve" in the provision of the Agreement at issue.  Instead, they agreed to divide the net sales proceeds if any of the Marital Entities were sold or liquidated.  Wife alleges that the three Marital Entities were sold or liquidated pursuant to the Agreement when 100% of their assets were sold leaving each entity as a hollow shell with nominal, if any, value.

The Agreement is a contract between Husband and Wife.[5]  "As with all questions of contract interpretation, we first attempt to ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning."  *Belton Chopper*, 496 S.W.3d at 532 (internal quotation omitted).  "We determine this intent based upon the contract language alone unless its terms are ambiguous."  *Id.*  "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]"  *Foley Co. v. Walnut Assoc.*, 597 S.W.2d 685, 689 (Mo. App. W.D. 1980) (quoting Restatement 2d of Contracts § 229(a)).  Because the Agreement uses the terms "dissolved," "sold," and "liquidated" in different places in the Agreement, we

---

[4] Husband testified that he left the shells of these holding companies intact to avoid liability for environmental hazards.  Husband believed that, should an "environmental disaster" occur, he would "hopefully be protected by the corporate veil."

[5] *See, supra,* n.2.

6

presume that the use of the different words was intentional or else they would have no effect.

The dictionary definition of "liquidate" includes "to convert (assets) into cash." *Liquidate*, MERRIAM WEBSTER, http://merriam-webster.com/dictionary/liquidate (last visited Apr. 27, 2022). The holding companies at issue were formed for the sole purpose of holding the real property used in Husband's other businesses; they were not "income-producing entities" or "revenue-producing entities," and there was very little to no activity in the holding companies after the sale of the real properties to Sterling. Their assets were converted to cash, which was then distributed to Husband personally or to his other businesses after the debt on the properties had been cleared. The holding companies, post-sale, held essentially no assets, and Husband's counsel conceded at oral argument that the holding companies currently have a negative value because they are subject to potential environmental liability and own, at most, negligible assets. Therefore, the holding companies have been liquidated. Further, the right of first refusal, which would allow the recovery of the real estate, was provided to a different entity that was not subject to the Agreement and that was solely controlled by Husband.

Most of Husband's evidence and argument to the trial court stressed that the transfer of the real estate was merely a financing tool. Husband argues that the "leaseback" agreements between MPP Group of Properties, Inc., and Sterling, and the fact that Husband used much of the proceeds from the sale of the real properties as capital for his other business entities, require a finding that the Marital Entities were not sold or liquidated. We find this evidence does not support Husband's position in this litigation. The Agreement

7

does not except sales or liquidations of the Marital Entities when a portion of the proceeds goes to fund even other *listed* entities, and MPP Group of Properties, Inc. is not one of the entities covered by the Agreement. The proceeds from the liquidation of the real estate went to Husband. Husband paid state and federal income taxes on the proceeds. His reinvestment of the proceeds from the sale of the Marital Entities assets into his other businesses is no more relevant to Wife's contractual right to share in the proceeds than if he had used the proceeds for his own personal expenses. And the "leaseback" agreements between Sterling and MPP Group of Properties, Inc. do not establish that the Marital Entities somehow still have an ownership interest in the real property. In fact, MPP Group of Properties, which is controlled solely by Husband, has the right of first refusal to repurchase the real property from Sterling, to the exclusion of the Marital Entities.

Further, the Marital Entities were left with no assets and no source of income, so exercising a right of first refusal to purchase the properties back from Sterling, even if they had the right to do so would be an impossibility. In fact, Husband fails to explain what further purpose the Marital Entities have, other than as a possible shield from environmental liability claims. In his brief, Husband states the Marital Entities are "required to maintain environmental impairment insurance pursuant to the Sterling agreements on the [Marital Entities]" and maintains that had they been "liquidated" or "sold" this requirement would make no sense. Hence, Husband makes no effort to justify the continued existence of the Marital Entities other than as insulation from potential environmental liabilities, as required by the new owner of the real estate from whom he now leases.

Husband also argues that nothing in the agreement *prohibited* Husband from selling assets of the Marital Entities, and he sold assets in his other businesses regularly or "many times over." This argument is unpersuasive. Husband's other business entities were in the business of selling products or services in the regular course of their business, but the Marital Entities existed solely as holding companies for the real estate they owned. Thus, when the real estate was sold, it was not in the regular course of business, and when the proceeds of the sales of the real estate were diverted to other entities, leaving the Marital Entities with no ability to purchase any new assets or create any new income, they were, pursuant to the terms of the Agreement, liquidated. It would further, be illogical for the Agreement to prohibit Husband from liquidating the Marital Entities but then also to specifically provide for what was to happen in the event Husband should liquidate the Marital Entities. Furthermore, there was no evidence that he had ever sold essentially *all* of the assets of any of these other entities whose assets he claims to have routinely sold; he only sold virtually *all* of the assets of the Marital Entities, the proceeds of which the Agreement required him to divide with Wife. "The sale of all, or substantially all, of a [company's] assets, not in the usual course of business, is highly suggestive of a liquidation of the business. . . ." *Flarsheim v. Twenty Five Thirty Two Broadway Corp.*, 432 S.W.2d 245, 251 (Mo. 1968). The Marital Entities each sold the only property it was holding, with none of the proceeds of the sales being returned to the entity that owned the property, but rather the proceeds were diverted to Husband's other entities, and thus the Marital Entities were liquidated, triggering Wife's right to share in the sales proceeds. For this reason, the

9

trial court erred in granting Husband's motion for summary judgment and denying Wife's motion for summary judgment.

Points I and II are granted.

### *Attorney's Fees*

Wife's third and fourth points on appeal relate to the trial court's award to Husband of attorney's fees and costs of over $500,000. "Ordinarily, under the American Rule, litigants must bear the expense of their own attorney's fees." *Sheppard v. East*, 192 S.W.3d 518, 523 (Mo. App. E.D. 2006). Attorney's fees may be recoverable, however, if a contract so provides. *Evans v. Werle*, 31 S.W.3d 489, 493 (Mo. App. W.D. 2000). The Agreement provides that in the event either Husband or Wife has to bring an action for failure to perform any of the obligations imposed by the Agreement, "the prevailing party in such action shall have the right to recover his or her reasonable attorney's fees and litigation costs reasonably expended in prosecuting or defending the action." The trial court awarded Husband attorney's fees and costs, with interest, per the agreement, because it found that Husband was the prevailing party.

Because we concluded in the above discussion of points one and two that Husband liquidated three Marital Entities covered by the Agreement, which triggered his obligation to share the sales proceeds with Wife, and that Husband failed to do so, thereby breaching the Agreement, and therefore that the trial court erred in granting Husband's motion for summary judgment and denying Wife's motion for summary judgment, we must conclude that the trial court also erred in granting Husband attorney's fees as the prevailing party.

Accordingly, Wife's Point III is granted, and her Point IV is denied as moot.

10

*Motion for Attorney's Fees on Appeal*

Prior to the submission of this case, both parties filed a motion for attorney's fees and costs on appeal pursuant to Western District Special Rule 29, which were taken with the case. Husband's motion for attorney's fees on appeal is denied. Wife's motion for attorney's fees on appeal is granted.

## Conclusion

For all of the above-stated reasons, we reverse the judgment of the trial court and remand for the court to enter judgment in favor of Wife and for a determination of Wife's damages, including reasonable attorney's fees and costs, including attorney's fees for this appeal.

_____
Gary D. Witt, Judge

All concur

11