

# Missouri Court of Appeals
## Southern District

### In Division

| | |
|---|---|
| NATIONWIDE TRANSFER LLC, ) | |
| D/B/A NATIONWIDE SETTLEMENT ) | |
| SOLUTIONS, and ) | |
| YOUR TIME SHARE STOPS HERE, LLC, ) | |
| D/B/A AMERICAN SETTLEMENT ) | |
| SERVICES, ) | |
| ) | |
| Appellants, ) | |
| ) | No. SD37267 |
| vs. ) | |
| ) | **Filed: August 4, 2023** |
| NEALLY LAW, LLC, and ) | |
| JOSHUA NEALLY, ) | |
| ) | |
| Respondents. ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell, Judge

**<u>AFFIRMED</u>**

Appellants had an arrangement with Neally Law, LLC, ("Law Firm") to assist Appellants' customers with release from their timeshares.[1] After a few years, the relationship soured and both sides sued each other. The circuit court ordered an accounting but denied the parties' claims for breach of contract and unjust enrichment. Appellants contend the circuit court misapplied the law in ruling against them. Finding

---

[1] The circuit court determined that attorney Joshua Neally, as an individual, was not a party to any agreement with Appellants. That finding has not been challenged on appeal.

no error of law, we affirm.

## Background

Appellants, timeshare exit companies, sponsored events during which they advertised their expertise in helping customers get out of their timeshare or vacation club agreements. Appellants charged and collected fees from their customers, but they did not provide legal advice. Instead, Appellants referred their customers to Law Firm in one of two ways.

In matters hereinafter referred to as "Type A," Appellants paid Law Firm a flat fee to contact a timeshare company and negotiate a complete release from the timeshare on behalf of Appellants' customers. Law Firm successfully obtained complete relief in 133 of the 973 Type A matters referred by Appellants.

In matters hereinafter referred to as "Type B," Appellants referred customers to Law Firm but paid no fees. Customers entered into a separate engagement agreement with Law Firm for legal representation. The initial fee, as specified and calculated in the agreement between Appellants and Law Firm, was paid by the clients and was to be placed in Law Firm's trust account. At the successful conclusion of the matter, Law Firm was to transfer earned legal fees into its operating account and remit two-thirds of those fees to Appellants.

After many such referrals of both types, Appellants filed suit for an accounting. The court ordered an accounting and appointed a special master as to Type B matters only. No accounting was ordered as to Type A matters because the number of referrals and the flat fee for each ($750) were not complicated. At the conclusion of the accounting, Appellants amended their suit to include claims for breach of contract and unjust enrichment. Law Firm counterclaimed under the same legal theories.

After a bench trial, the circuit court denied all claims.  As relevant to this appeal, the court entered the following findings and conclusions:

1. Neither side had realistic expectations in Type A matters:  Appellants asserted no fee was earned until the customer had been completely relieved from the timeshare, while Law Firm asserted the fee was earned on referral before any work was done.

2. No relief was awarded on Type A matters because neither side proved, to the court's satisfaction, that it was owed money.  "It is simply impossible for the Court to determine how much work was done by Neally Law on each matter."

3. The agreement to split fees in Type B matters is unenforceable under Missouri law (§ 484.150)[2] and public policy.

4. Appellants' unjust enrichment claim on Type B matters fails because:

   a. Appellants are not one of the parties for whom § 484.150 provides a cause of action for money paid pursuant to an illegal fee-splitting agreement; and

   b. "[Appellants'] only role was to provide the names of the customers to Neally Law[,]" for which Appellants charged and kept fees paid by customers. Appellants were not parties to the separate contracts between customers and Law Firm.

## Legal Principles

We will affirm the judgment in a court-tried case unless an appellant proves one of the grounds for relief listed in ***Murphy v. Carron***[3]:  there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, the judgment erroneously declares the law, or the judgment erroneously applies the law. ***Singleton v.***

---

[2] Statutory references are to RSMo. (2016).

[3] *See* Rule 84.13(d) (2012); ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976); ***O'Connell v. Deering***, 631 S.W.3d 649, 652 (Mo.App. 2021).

***Singleton***, 659 S.W.3d 336, 341 (Mo. banc 2023). Claims that the circuit court erroneously declared or applied the law, as here, are reviewed *de novo*. ***Id.*** This standard applies to both the circuit court's legal conclusions and its application of law to the facts. ***Id.*** We defer to the circuit court's factual determinations and view all evidence and reasonable inferences from the evidence in the light most favorable to the judgment. ***Id.*** Even if an appellant proves an error of law, we will reverse only if the appellant also shows the error materially affects the merits of the action and we are left with a firm belief the judgment is wrong. ***Lin v. Clark***, 666 S.W.3d 270, 277 (Mo.App. 2023).

"The elements of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit; and (3) acceptance and retention of the benefit under circumstances that without payment would be inequitable." ***Autumn Lakes Ass'n v. Tran***, 655 S.W.3d 442, 449 (Mo.App. 2022) (quoting ***Hoffmeister v. Kranawetter***, 407 S.W.3d 59, 61 (Mo.App. 2013)). "The essence of unjust enrichment is that the defendant has received a benefit that it would be inequitable for him to retain. The focus is not on the loss sustained by the plaintiff, but on the benefit to the defendant." ***Id.*** (internal punctuation and citation omitted).

## Type B Matters (Point I)

Appellants first claim that the circuit court erroneously applied the law in requiring them to prove they *directly* conferred a benefit to Law Firm in order to recover under a theory of unjust enrichment for Type B matters. They argue that the "benefit conferred" element of their claim may be satisfied by a showing that the benefit was obtained indirectly, *i.e.,* at the expense of the Appellants, in the amount determined by the accounting.

4

Appellants do not dispute the circuit court's findings that their "only role" was to provide names of Type B customers to Law Firm, that fees were paid to Law Firm by customers for legal services provided under a separate representation agreement, or that Appellants did not share with Law Firm the fees Appellants received from customers in Type B matters. Instead, they contend those upfront fees were not sufficient compensation for the referrals because Law Firm also had agreed to cut Appellants in on a share of fees paid by customers to Law Firm for legal services rendered.

Appellants' distinction between direct and indirect benefit misses the mark because they had no right to *any* portion of legal fees paid by its customers to Law Firm under a legal representation agreement to which Appellants were not a party. Missouri law, disciplinary rules, and firm public policy clearly forbid such fee-splitting arrangements between an attorney and a lay agency. ***Am. Civ. Liberties Union/E. Missouri Fund v. Miller***, 803 S.W.2d 592, 594-95 (Mo. banc 1991). Like the plaintiff in ***Miller***, Appellants' unjust enrichment claim fails because, as a matter of law, they had no right to the legal fees their customers paid to Law Firm and thus no benefit was conferred on Law Firm. ***Id.*** at 595.

The inability to recover in law or equity on the basis of an illegal agreement has been a fixture of Missouri law for more than a century.

> If there be one principle of the law well settled, it is this: That a contract, express or implied, based on an illegal consideration, whether that consideration appear on the face of the contract or be proved *aliunde*, **cannot be enforced either at law or in equity**; that the moment the illegality of the contract is disclosed **the gates of legal and equitable relief and remedy are at once shut against the party who seeks to enforce such a contract.**

***Sprague v. Rooney***, 16 S.W. 505, 508 (Mo. 1891) (emphasis added). "[T]hese parties are in pari delicto; and the law will not lend its aid to either of them to enforce any claim

or demand against the other arising therefrom, but will leave them where it finds them."
***Finley v. Williamson***, 202 Mo.App. 276, 215 S.W. 743, 746 (Mo.App. 1919).

Appellants also cite general principles of equity and an out-of-state case to argue that equitable relief *should* provide a remedy in cases where an attorney consents to or drafts an illegal fee-splitting agreement with non-attorneys. As an intermediate court of appeal, we are limited in function and authority. ***State ex rel. Schmitt v. Schier Co., Inc.***, 594 S.W.3d 245, 256 (Mo.App. 2020). We are an error-correcting court. ***Id.*** It is neither our purview nor our prerogative to declare our personal perceptions of justice or declare public policy. ***Id.*** We are bound constitutionally to follow ***Miller***, the most recent, controlling decision of the Supreme Court of Missouri. ***YAM Cap. III, LLC v. GS Hosp., LLC***, 648 S.W.3d 878, 890 (Mo.App. 2022).

The circuit court did not erroneously declare or misapply the law on unjust enrichment. Point I is denied.

## Type A Matters (Point II)

Appellants allege that the court erred as a matter of law in entering judgment in favor of Law Firm on Appellants' claims for unjust enrichment in Type A matters. In support, they argue the plain language of the agreement favored their construction and any ambiguity should have been construed against Law Firm as drafter of the agreement.[4]

In a purely legal challenge, as here, an appellant essentially asserts that even if the facts are as found by the trial court, the judgment denying their unjust enrichment claim should not have been entered as a matter of law. Appellants had the burden to prove the

---

[4] Appellants further argued they were entitled to judgment because the Type A matter fees they paid Law Firm were immediately deposited into Law Firm's operating account rather than its trust account. We are not persuaded that Appellants are entitled to judgment as a matter of law on this basis. Their pleaded theories of recovery were breach of contract and unjust enrichment, not that a breach of attorney trust account rules entitled them to recover under a negligence *per se* theory.

6

essential elements of their unjust enrichment claim in Type A matters. ***Anchor Ctr. Partners, Ltd. v. Mercantile Bank, N.A.***, 803 S.W.2d 23, 30 (Mo. banc 1991). This includes not only showing what benefit was conferred, but also the amount of enrichment that is unjust for Law Firm to retain. ***Tran***, 655 S.W.3d at 449.

The circuit court found the evidence was insufficient to determine how much work was done on each matter. Consequently, the court could not know how much of the fee was earned and how much, if any, of the fee was unjustly retained. We must defer to those findings of fact. The only way this finding of fact does not doom Appellants' unjust enrichment claim, and point on appeal, is if Law Firm is not entitled to *any* fee in Type A matters unless and until Appellants' customer is completely relieved of their timeshare obligation.

"The interpretation of a contract is a question of law which we review *de novo*." ***Belton Chopper 58, LLC v. N. Cass Dev., LLC***, 496 S.W.3d 529, 532 (Mo.App. 2016). "[W]e first attempt to ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning. We determine this intent based upon the contract language alone unless its terms are ambiguous." ***Id.*** (internal punctuation and citation omitted). An interpretation that yields unreasonable results will be rejected if a probable and reasonable construction can be adopted. ***Id.***

The parties' written agreements[5] generally provided, "The Fees earned will be based on the services requested by [Appellants] and provided by [Law Firm]." More specifically, "All Type A matters will be billed at the rate of $750 per client per interval or

---

[5] Law Firm and Nationwide Transfer, LLC, were the only parties to the agreement. Your Time Share Stops Here was not a signatory but all parties acted as if the agreement applied to both Appellants.

contract owned." The parties agreed and the court found that this was a flat fee agreement for legal services in Type A matters. However, as the circuit court noted, the written agreements do not define what it means for work on a referral to be "completed."

The lack of a definition for a given term in a contract does not mean the term is necessarily ambiguous. ***Exotic Motors v. Zurich Am. Ins. Co.***, 597 S.W.3d 767, 772 (Mo.App. 2020). In such circumstance, we give undefined terms their plain and ordinary meanings. ***Id.***

Nothing in the written agreement plainly expresses an understanding that Law Firm is only entitled to the fees paid by Appellants when a customer is completely relieved of their timeshare obligation. This interpretation is based only on self-serving testimony from Appellants' witness. The circuit court found such an expectation to be "unrealistic." We agree. Appellants' interpretation would yield unreasonable results.

The parties clearly contemplated some Type A matters taking more work than others. Among other things, the written agreements reflected more of a concern with capping Appellants' financial obligations than with achieving any particular result for its customers. If litigation was required "to achieve the objectives of [Appellants'] clients," then the written agreement provided, Law Firm "will not bill [Appellants] any additional moneys but may bill the client for legal services." In the event a customer requested a refund, Law Firm agreed to refund fees paid to it by Appellants.

Having reviewed the written agreements and evidence adduced thereon, we cannot say that the circuit court's interpretation of the contract is erroneous. Law Firm is not entitled to *more* than $750 from Appellant per Type A referral, but some portion of the fee is earned when Law Firm works on the referral. Appellants failed to meet their burden

to show what portion, if any, of the Type A fees paid were unearned and therefore unjustly enriching to Law Firm.   Point II is denied.  Judgment affirmed.

JACK A. L. GOODMAN, C.J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS