James H. ANDERSON and Rose Mary Anderson, Appellant,

v.

Patricia Jeanne PARKER, et al., Respondents.

No. WD 72431.

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

Russell M. Nasteff, for Appellant.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, ALOK AHUJA, Judge and KAREN KING MITCHELL, Judge.

VICTOR C. HOWARD, Judge.

James and Rose Mary Anderson appeal the judgment of the trial court granting the motion for judgment notwithstanding the verdict or, alternatively, for a new trial of Patricia Jeanne Parker, Trustee of the Camden W. Riley, Jr. Trust, and Jeanne L. Riley, Individually and as Trustee of the Jeanne L. Riley Trust (Defendants). The judgment is affirmed.

In 1979, the Riley brothers, John, James, and Camden, owned property on North Green Hills Road in Kansas City. The property contained a house, stone barn, and over 115 acres of land. The Andersons were in the market to upgrade to a larger home, and a friend of theirs suggested that the Riley brothers might be interested in selling the house on their property. The Andersons looked at the property and "fell in love with the setting." They made an offer to the Riley brothers to purchase approximately six acres that contained the home and the barn. The Riley brothers, however, did not want to sell the barn and the approximately two and one half acres on which it sat. The Andersons, however, agreed to purchase the three and one half acre tract containing the house if the Riley brothers gave them the right of first refusal to purchase the additional tract with the barn if and when the Riley brothers sold the rest of the property.

Thus, on June 30, 1979, the Riley brothers and Camden's wife, Jeanne, entered into a real estate contract with the Andersons for the sale of the approximately three and one half acre tract containing the house. The Andersons agreed to pay $90,000 with a down payment of $500 and the remaining $89,500 due at closing. The purchase price also included a four-car garage, smokehouse, chicken houses, range, refrigerator, drapery, and carpets.

On the same day, the Riley brothers and the Andersons also entered into the agreement at issue in this case. It provided:

AGREEMENT—June 30, 1979

Subject: Disposal of additional acreage of the Riley farm located at 7717 N. Greenhills Rd., K.C., Mo. 64151

It is agreed that in the event additional acreage is disposed of involving the area

between the existing house and the stone barn—including the stone barn, that James Anderson and wife (Rose Mary) will have first option to purchase this area (approx. 2 to 2 ½ acres) at a cost deemed fair by a competent appraiser.

The document was signed by John, James, and Camden Riley and James and Rose Mary Anderson.

After purchasing the house, the Andersons maintained contact with the Riley brothers, and Mr. Anderson would periodically discuss the agreement with Camden. Mr. Anderson would ask Camden if he was ready to sell the barn, but Camden was "never quite ready to let go of it."

Camden survived his brothers, John and James. James predeceased John, and John died on December 29, 2002. Camden passed away on January 6, 2004. At the time of his death, the Riley property was in the Camden W. Riley Jr. Trust. A few months after Camden's death in June 2004, the Andersons saw Mrs. Riley and Patricia Parker, Camden's daughter, at an estate auction. They told Mrs. Riley and Mrs. Parker that they were interested in buying the barn and that they had an agreement with the Riley brothers. Within two weeks of the estate auction, Mr. Anderson delivered copies of the agreement to Mrs. Riley and to Mrs. Parker. Mrs. Anderson also had lunch with Mrs. Riley sometime during the summer of 2004, asked what she intended to do with the Riley property, and again mentioned the agreement.

In January 2005, Mrs. Parker called the Barth brothers and asked if their development company was interested in purchasing the Riley property. On January 12, 2005, Mrs. Parker entered into a real estate contract with the Barth brothers to sell the 115–acre property for $20,000 an acre or approximately $2.3 million. Mrs.

Riley did not inform the Andersons about the sale of the property to the Barth brothers and did not tell the Barth brothers about the agreement between the Riley brothers and the Andersons. Mrs. Parker informed Mr. Anderson in June 2005 that a party was interested in buying the property for $20,000 an acre, but she did not tell him that the property was actually under contract. Mrs. Parker did not offer to sell any of the Riley property to the Andersons prior to the sale to the Barth brothers. The sale to the Barth brothers closed on August 15, 2005, and the Camden W. Riley Jr. Trust, for which Mrs. Parker was the trustee, received $2,299,764.80, the Jeanne L. Riley Trust received $114,834.40, and Mrs. Parker and her brother each received $76,556.30.

The Andersons sued Defendants for breach of contract and fraud. After a trial, the jury returned a verdict in favor of the Andersons against Mrs. Parker, Trustee of the Camden W. Riley Jr. Trust, and Mrs. Riley, Trustee of the Jeanne L. Riley Trust, for breach of contract and assessed damages of $73,000. It returned a verdict in favor of the Andersons against Mrs. Riley individually for fraud and assessed damages at $2000. The trial court entered judgment accordingly. Thereafter, Defendants filed a motion for JNOV or, alternatively, for a new trial. The trial court granted Defendants' motion for the following reasons: the agreement did not adequately provide a description of the real estate; the agreement did not adequately describe a price and did not recite consideration; the agreement did not bind anyone other than the three brothers who were signatories and is not binding on their heirs, successors, or assigns; the agreement is not binding on Defendants; if the agreement is other than the personal promise of the brothers, it violates the rule against perpetuities; the plaintiffs did not

prove the damages awarded; Mrs. Riley did not make any actionable statements or representations to the plaintiffs; and plaintiffs did not sustain any damages as a result of any representation by Mrs. Riley. This appeal by the Andersons followed.

 A defendant is entitled to judgment notwithstanding the verdict (JNOV) only when the plaintiff fails to make a submissible case. *Porter v. Toys "R" Us–Del., Inc.,* 152 S.W.3d 310, 315 (Mo.App. W.D.2004). To make a submissible case, the plaintiff must present substantial evidence for every fact essential to liability. *Id.* "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case." *Id.* (internal quotes and citation omitted).

 "In reviewing for a submissible case, the evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the plaintiff." *Id.* The plaintiff's evidence is presumed to be true, and the defendant's evidence that does not support the plaintiff's case is disregarded. *Id.* at 315–16. However, an appellate court will not supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Id.* at 316. "Whether the evidence in a case is substantial and whether the inferences drawn therefrom are reasonable are questions of law." *Id.* Granting a JNOV is a drastic action, and a jury's verdict will not be overturned unless there is a complete absence of probative facts to support it. *Id.*

 The Andersons raise six points on appeal challenging the trial court's reasons for granting Defendants' motion for JNOV or, alternatively, for a new trial. The issue of whether the agreement was binding on Defendants is dispositive, and the

Andersons' remaining points on appeal need not be addressed.

 Although the Andersons describe the agreement as an option to purchase real estate, that designation is not entirely accurate. "A true option 'creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he is willing to part with ownership.'" *Hensley–O'Neal v. Metro. Nat'l Bank,* 297 S.W.3d 610, 614 (Mo.App. S.D.2009). On the other hand, a right of first refusal, or preemptive right, requires the seller, when and if he decides to sell the stipulated piece of property, to first offer the property to the holder of the right, either at the stipulated price or at a price and on the terms the seller is willing to sell. *Jewish Ctr. for Aged v. BSPM Trustees, Inc.,* 295 S.W.3d 513, 519 (Mo. App. E.D.2009). "The preemptive right is merely contingent until the owner arrives at a decision to sell the property, at which point the preemptive right ripens into a full option." *McNabb v. Barrett,* 257 S.W.3d 166, 170 (Mo.App. W.D.2008) (internal quotes and citations omitted). "The person holding the right of first refusal or preemption cannot compel an unwilling seller to sell." *Jewish Ctr. for Aged,* 295 S.W.3d at 519. Rather, once the seller chooses to sell, the holder of the preemption has the option of purchasing the property in accordance with the agreement. *Id.* "The right of first refusal is most frequently given in connection with the sale or lease of real estate." *Id.* The language in the instant agreement shows that the Andersons were given a preemptive right to purchase the additional property.

 A preemptive right that does not specifically provide that it is binding on the heirs and assigns of the parties and does not indicate an intent that it survive beyond the lifetime of the parties is personal to the parties and expires on death.

*Kershner v. Hurlburt*, 277 S.W.2d 619, 623 (Mo.1955); *In re Estate of Sifferman*, 603 S.W.2d 30, 32 (Mo.App. S.D.1980).[1] In this case, the agreement did not specifically provide that it was binding on the heirs or assigns of the parties. This indicated that the signatories to the agreement, the Riley brothers and the Andersons, intended that the preemptive right was personal to the Riley brothers and the Andersons only. The agreement, therefore, was a personal one that expired on Camden's death and could not be enforced against his heirs or assigns.[2] *See Estate of Sifferman*, 603 S.W.2d at 32 (where preemptive right to purchase additional acreage was specifically binding on the heirs and assigns of the grantor of the option but was silent as to whether it could be assigned or devised by the grantee, the preemptive right was personal to the grantee and could not be enforced by the grantee's heirs or assigns). *See also Williams v. Diederich*, 359 Mo. 683, 223 S.W.2d 402, 403 (1949)(where in a case involving boating and fishing privileges on a reservoir, there was no language in the agreement that directly or indirectly inferred that the privileges were assignable or inheritable,

they were personal and could not be assigned); *Estate of Nowell*, 607 S.W.2d 792, 795 (Mo.App. W.D.1980)(where language in will giving son an option to purchase real estate did not evidence intent that estate or heirs of son would succeed to option purchase right, option was personal to son and expired when son died, and son's estate acquired no right to force sale of real estate). Because the agreement was not binding on Defendants, the trial court did not err in granting Defendants' motion for JNOV or, alternatively, for a new trial.

The judgment of the trial court is affirmed.

All concur.

---

1. As in the instant case, *Kershner* and *Estate of Sifferman* use the term "option" when describing the preemptive rights in those cases.

2. The Andersons argue that the agreement in this case was a covenant that runs with the land and was binding on Defendants who had knowledge of the existence of the option. They expanded this argument at oral argument when they asserted that when Camden transferred the land to his trust during his lifetime, the "trust became him [Camden]" and was "an after-acquirer with knowledge." They cite *C & J Delivery, Inc. v. Vinyard & Lee & Partners, Inc.*, 647 S.W.2d 564, 569 (Mo. App. E.D.1983), to support this argument. *See also Jewish Ctr. for Aged*, 295 S.W.3d at 519; *Megargel Willbrand & Co., LLC v. FAM-PAT Ltd. P'ship*, 210 S.W.3d 205, 210–11 (Mo. App. E.D.2006). "A right of first refusal that is contained in a lease is regarded as a cove-

nant that runs with the land." *Megargel Willbrand & Co.*, 210 S.W.3d at 210–11 (citing *C & J Delivery*, 647 S.W.2d at 569). As such, it is "binding on a purchaser of the reversion charged with notice of the lease. A purchaser for value takes subject to the lease and the covenants therein if he has actual or constructive notice of it." *C & J Delivery*, 647 S.W.2d at 569. The Andersons do not explain how *C & J Delivery* applies to the instant case, which does not involve a lease. *Kershner*, which states the general rule that preemptive rights are personal to the parties, specifically noted that the contract in that case did "not involve an option given in connection with a lease." 277 S.W.2d at 623. Furthermore, the Andersons failed to make the argument regarding conveyance to the trust in their brief and failed to cite any authority during oral argument to support it.