

# Missouri Court of Appeals

## Southern District

In Division

DOUGLAS NIEMUTH, and )
CAROL NIEMUTH, )
)
    Respondents/Cross-Appellants, )   Nos. SD37950 and SD38028
)        CONSOLIDATED
v. )
)   **Filed: April 2, 2024**
DONALD GASTON, and )
ROUNDCOUNT RANCH, LLC, )
)
    Appellants/Respondents. )

APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY

Honorable Megan K. Seay, Judge

## REVERSED AND REMANDED WITH INSTRUCTIONS

Donald Gaston ("Gaston") and Roundcount Ranch, LLC ("Roundcount") appeal from the trial court's grant of summary judgment in favor of Douglas and Carol Niemuth (collectively, "the Niemuths") on their claims for a declaratory judgment and breach of contract and denial of Gaston and Roundcount's motions for summary judgment on their claims for declaratory judgment. In its judgment, the trial court found the Niemuths were entitled to judgment as a matter of law on their claims because the right-of-first-refusal ("ROFR") provision in the real estate contract between Gaston and the Niemuths "allowed for [the Niemuths] to match the purchase price offer per acre, with like terms, pursuant to the May 14, 2021 sales contract entered into between [Gaston] and [Roundcount] for any portion or all of the 190 acres

specifically identified in the right of first refusal." It also ordered Gaston to sell the "97.3 acres to [the Niemuths] as specified by [the Niemuths[.]"

Gaston and Roundcount appeal from that judgment in two points. In point 1, Gaston and Roundcount argue the trial court erred in granting the Niemuths' motion for summary judgment and denying Gaston and Roundcount's motions, because the Niemuths failed to demonstrate they were entitled to judgment as a matter of law in that the ROFR agreement required them to match the terms of Roundcount's offer to purchase the *entire* 190-acre tract, which they did not do. We agree. Because the ROFR required the Niemuths to match the terms of Roundcount's bona fide offer, which included the term that the offer was to purchase the entire 190-acre tract, the Niemuths were not entitled to judgment as a matter of law.[1] The trial court's judgment is reversed.

## Standard of Review

Our review of the trial court's decision to grant summary judgment is *de novo*. **Green v. Fotoohighiam**, 606 S.W.3d 113, 115 (Mo. banc 2020). "Our *de novo* standard of review means that we look at the summary judgment issues presented on appeal as the trial court should have initially under Rule 74.04, and we give no deference to the trial court's ruling."[2] **Great Southern Bank v. Blue Chalk Constr., LLC**, 497 S.W.3d 825, 834 (Mo. App. S.D. 2016). We review the record in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. **Green**, 606 S.W.3d at 116.

"Summary judgment practice in Missouri is governed by Rule 74.04 and [the Supreme Court of Missouri's] decision in **ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply**

---

[1] In point 2, Gaston and Roundcount argue the trial court erred in granting the Niemuths' motion for summary judgment and denying Gaston and Roundcount's motions, because the Niemuths' waived their ROFR, in that the Niemuths' response constituted a counteroffer, and therefore, constituted a rejection of the offer. Because our resolution of point 1 is dispositive of Gaston and Roundcount's point 2, we need not address that point.

[2] All rule references are to Missouri Court Rules 2023.

***Corp.***, 854 S.W.2d 371 (Mo. banc 1993)." ***Green***, 606 S.W.3d at 116. "Summary judgment is proper only if the moving party establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." ***Templeton v. Orth***, SC 100089, 2024 WL 340946, at *2 (Mo. Jan. 30, 2024).

> "Ordinarily, the denial of a motion for summary judgment will not be reviewed on appeal." *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869, 879 (Mo. App. S.D. 2012). "Where, however, the material facts are undisputed and the merits of the denied cross-motion for summary judgment are inextricably intertwined with the issues raised in the granted motion for summary judgment, the merits of the denial of the cross-motion may be reviewed on appeal." *Farmer's Ins. Co. v. Wilson*, 424 S.W.3d 487, 491 n.4 (Mo. App. S.D. 2014).

***Boone Cnty. Fire Prot. Dist. v. City of Columbia***, 638 S.W.3d 555, 558 (Mo. App. W.D. 2021) (quoting ***Behrick v. Konert Farms Homeowners' Ass'n***, 601 S.W.3d 567, 573 (Mo. App. E.D. 2020)). Because the material facts are undisputed and the merits of Gaston and Roundcount's denied cross-motions for summary judgment are inextricably intertwined with the issues raised in the Niemuths' granted motion for summary judgment, we also review the merits of the denial of Gaston and Roundcount's motions for summary judgment.

## Factual and Procedural Background

The parties do not dispute the facts of the case; they only argue the application of the law. In 2012, Gaston and the Niemuths entered into a real estate contract which granted the Niemuths a ROFR to purchase "any portion or all of [Gaston's] remaining land according to the bonefide [sic] offer[.]" The parties agreed the term "remaining land" referred to a 190-acre tract owned by Gaston. The ROFR provided:

> 5.      [The Niemuths] shall have the right of first refusal to purchase any portion or all of [Gaston's] remaining land according to the bonefide [sic] offer received by [Gaston] from a bonefide [sic] purchaser for value. This right of first refusal shall be in full force and effect until [Gaston] sells all of [his] remaining land to a bonefide [sic] purchaser for value and [the Niemuths] [have] had the opportunity to exercise this right of first refusal as to every part and parcel of [Gaston's] remaining land.
>
> A.      [Gaston] shall notify [the Niemuths] in writing of the receipt of a bonefide [sic] offer to purchase all or a portion of [Gaston's] remaining land. [Gaston] shall make the notification in writing and include a copy of such bonefide [sic]

offer, either by copy of said offer, or if the offer is verbal, by a transcription in writing of the terms and conditions of said verbal offer. The notification shall be give[n] to [the Niemuths] within 15 days after receipt of said offer.

B.      [The Niemuths] shall have 15 days to exercise the right of first refusal to purchase in writing to [Gaston] within 15 days after the date of receipt of written notification from [Gaston]. . . .

C.      The procedure set forth in the previous paragraphs 5A and 5B shall be repeated until [Gaston] has sold all of his remaining land to either purchaser for value or to [the Niemuths], as the case may be.

In May 2021, Gaston received an offer (the "first offer") from Roundcount to purchase approximately 508 acres of Gaston's land, which included the entire 190-acre tract which was subject to the ROFR, for a total price of $1,800,000.00. Gaston timely notified the Niemuths of the first offer and enclosed the terms of the sale.

The Niemuths timely notified Gaston they were opting to exercise their ROFR as to only 97.43 acres of the remaining land, not the entire 190-acre tract. Counsel for Gaston responded that the terms in the first offer were for the entire 190 acres. The Niemuths again stated their intention to purchase only 97.43 acres based on the purchase price in the first offer.

Gaston then received a second offer from Roundcount (the "second offer") whereby Roundcount offered to purchase the complete 190-acre tract for $902,500. Gaston timely provided the Niemuths with the terms of the second offer. The Niemuths again timely indicated their intent to purchase only 97.43 acres. Gaston did not believe the Niemuths had a right to purchase only one of the parcels being sold.

The Niemuths filed suit soon thereafter, seeking a declaratory judgment and specific performance, alleging that under the ROFR, they had the right to purchase the 97.43 acres. Roundcount filed a motion to intervene, which was granted, and filed a counterclaim/third-party petition against the Niemuths, seeking a declaratory judgment, alleging that under the ROFR, the Niemuths failed to properly exercise their right of first refusal by failing to agree to

4

purchase the entire 190-acre tract.[3]  Gaston likewise filed a counterclaim seeking a declaratory judgment on the grounds the Niemuths failed to properly exercise their right of first refusal by failing to agree to purchase the entire 190-acre tract.

Each party filed separate motions for summary judgment on their claims for a declaratory judgment, arguing that they were entitled to judgment as a matter of law based on the language in the ROFR.  In addition, the Niemuths also sought summary judgment on their breach of contract claim.  The trial court granted the Niemuths' motion for summary judgment and denied Gaston and Roundcount's motions for summary judgment, and this appeal followed.

**Discussion**

In point 1, Gaston and Roundcount argue the Niemuths were not entitled to judgment as a matter of law because, under the terms of the ROFR, the Niemuths were required to match the terms of Roundcount's bona fide offer to purchase the entire 190 acres of land.

> Under Missouri law, a right of first refusal, or preemptive right, requires the seller, when or if she decides to sell the stipulated piece of property, to first offer the property to the holder of the right, either at a stipulated price or at the price and on the terms the seller is willing to sell.

*Blue Ridge Bank & Tr. Co. v. Trosen*, 309 S.W.3d 812, 816 (Mo. App. W.D. 2010) (quoting *Schroeder v. Duenke*, 265 S.W.3d 843, 847 (Mo. App. E.D. 2008)).  "The person holding the right of first refusal or preemption cannot compel an unwilling seller to sell." *Anderson v. Parker*, 351 S.W.3d 827, 831 (Mo. App. W.D. 2011).  But, once the seller chooses to sell, the holder of a right of first refusal has the option of purchasing the property in accordance with the agreement.  *Blue Ridge Bank*, 309 S.W.3d at 816.  In other words,

> a right of first refusal cannot be exercised unilaterally, but can only be exercised if two conditions are met:  first, the right of first refusal must be triggered by a bona fide and enforceable offer to purchase the property, meaning an offer that is made honestly and with serious intent, and second, the owner of the property must have decided to accept that third-party offer.
>
> . . . .

---

[3] Roundcount and Gaston also alleged claims of tortious interference with a contractual relationship and tortious interference with a business expectancy.

In order to act on a right of first refusal, the promisee must *unequivocally* accept *the terms of the offer. The owner of the assets subject to the right of refusal remains master of the conditions under which the owner will relinquish its interest*, as long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the preemptive rights.

92 C.J.S. Vendor and Purchaser § 177 (2023) (emphasis added) (footnote omitted).

Because a right of first refusal is a contractual right, the rules of contract interpretation apply. *See **Belton Chopper 58, LLC v. N. Cass Dev., LLC***, 496 S.W.3d 529, 532 (Mo. App. W.D. 2016). "The cardinal rule in interpreting a contract is to ascertain the intent of the parties and give effect to that intent." ***Chadwick v. Huntoon***, 634 S.W.3d 832, 839 (Mo. App. S.D. 2021). Unless the terms of a contract are ambiguous, we determine the intent of the parties by looking solely at the language used in the contract. ***Ethridge v. TierOne Bank***, 226 S.W.3d 127, 131 (Mo. banc 2007). "The clauses must be read in the context of the entire contract, and interpretations that render provisions meaningless should be avoided." ***Chadwick***, 634 S.W.3d at 839 (quoting ***Nicolazzi v. Bone***, 564 S.W.3d 364, 371 (Mo. App. E.D. 2018)). If a contract's terms are clear and unambiguous, we enforce the agreement as written and will not supply additional terms. ***Id.*** "A contract is ambiguous only if its terms are susceptible of more than one meaning such that reasonable persons may fairly and honestly differ in their construction of the terms." ***STL Riverview Plaza LLC v. Metropolitan St. Louis Sewer Dist.***, 681 S.W.3d 290, 301 (Mo. App. E.D. 2023). A dispute between the parties over the contract's meaning does not make it ambiguous.[4] ***Id.*** "Rather, an ambiguity arises if the language is reasonably susceptible to two or more interpretations." ***Id.***

Furthermore, "[w]e interpret contracts to reach fair, reasonable, and practical results, for it is to be presumed that the parties contracted to that end." ***TNT Amusements, Inc. v. BFC Enters., Inc.***, 613 S.W.3d 403, 409 (Mo. App. E.D. 2020) (quoting ***Patterson v. Rough Road Rescue, Inc.***, 529 S.W.3d 887, 894 (Mo. App. E.D. 2017)). We will reject an

---

[4] While the parties offer different interpretations of the ROFR, neither argues that it is ambiguous.

6

interpretation of a contract that leads to unreasonable results, when a probable and reasonable construction can be adopted. ***Belton Chopper***, 496 S.W.3d at 532; ***TNT Amusements***, 613 S.W.3d at 409. Finally, "[a] right of first refusal is strictly construed, and strict compliance with the terms of the option is required for its exercise."[5] 92 C.J.S. Vendor and Purchaser § 177 (2023).

The language at issue reads:

5.      [The Niemuths] shall have the right of first refusal to purchase any portion or all of [Gaston's] remaining land according to the bonefide [sic] offer received by [Gaston] from a bonefide [sic] purchaser for value. This right of first refusal shall be in full force and effect until [Gaston] sells all of [his] remaining land to a bonefide [sic] purchaser for value and [the Niemuths] [have] had the opportunity to exercise this right of first refusal as to every part and parcel of [Gaston's] remaining land.

Here, the ROFR is not ambiguous and the only reasonable construction is that the Niemuths have a ROFR to purchase any portion or all of Gaston's land set out in the bona fide offer received by Gaston by a bona fide purchaser. This means that if Gaston had received a bona fide offer for the purchase of a portion of the 190-acre tract, the Niemuths would have the right to purchase that specific portion of the 190-acre tract. Likewise, if Gaston received a bona fide offer for the purchase of the entire 190-acre tract, the Niemuths would have the right to purchase the entire 190-acre tract. To adopt the Niemuths' construction would require us to ignore the "according to the bonefide [sic] offer" language, which we cannot do. *See **Gulf Ins. Co. v. Noble Broadcast***, 936 S.W.2d 810, 814 (Mo. banc 1997) (In contract interpretation, "every word in a contract is to be given meaning if possible."). Moreover, the portion of the

---

[5] There are no Missouri cases that we are aware of that explicitly state ROFRs are to be strictly construed. However, Missouri case law does strictly construe options to purchase. ***Boatmen's Bank of Mid-Missouri v. Crossroads W. Shopping Ctr., Ltd.***, 907 S.W.2d 800, 803 (Mo. App. W.D. 1995). While a ROFR, also known as a "preemptive right", is different than an option to purchase, it "ripens into a full option" when the owner decides to sell. ***Anderson***, 351 S.W.3d at 831 (internal quotation and citation omitted). Since a ROFR ripens into a full option once an owner decides to sell and because we do strictly construe options to purchase, we see no reason to apply a different rule of construction to ROFRs. Moreover, most jurisdictions strictly construe ROFRs. *See **Kaiser v. Bowlen***, 455 F.3d 1197, 1206 (10th Cir. 2006) ("Under Colorado law, as in most jurisdictions in the country, such restrictions are interpreted narrowly.").

property identified in the bona fide offer *is* a material term of that offer.  In fact, one of the main purposes of a real estate contract is to "convey a *unique* interest in a particular tract of land[.]" ***Brown v. Pfeiffer***, 682 S.W.3d 45, 52 (Mo. App. W.D. 2024) (emphasis added).  Because Roundcount's bona fide offer included the purchase of the entire 190-acre tract, the Niemuths, in order to act on their rights under the ROFR, were required to unequivocally accept the offer to buy the entire 190-acre tract.

Finally, to interpret the ROFR provision in a manner that allows the Niemuths to "cherry pick" which portion of the 190-acre tract they wish to purchase instead of requiring them to agree to the terms set out in the bona fide offer is unreasonable since it would force Gaston to sell on terms to which he never agreed.  Under the Niemuths' construction, for example, if Gaston wished to sell only ten acres of his 190-acre tract, and received a bona fide offer for the purchase of those ten acres, the Niemuths would have the right to purchase the entire tract or any amount of the tract, even if Gaston never intended to sell any acreage beyond those specific 10 acres.  An interpretation that allows the holder of the ROFR to pick and choose the portion of the acreage they want to buy, even if the seller does not want to sell that particular acreage, is unreasonable and would frustrate both the purpose of a real estate contract, which is to convey a unique interest in a particular tract of land, and the purpose of a right of first refusal, which is to give the holder of the ROFR the option to purchase property "on the terms the seller is willing to sell." ***Schroeder***, 265 S.W.3d at 847.  A right of first refusal is not a tool for compelling a seller to part with the property on terms they do not agree to.  Because the Niemuths' construction of the ROFR is unreasonable, it does not render the ROFR ambiguous, and we reject it.[6] *See*

---

[6] Our interpretation is buttressed by paragraph C, which states "[t]he procedure set forth in the previous paragraphs 5A and 5B shall be repeated until [Gaston] has sold all of his remaining land to either purchaser for value or to the [Niemuths], as the case may be."  Thus, the intent was to give the Niemuths the right to purchase any or all of the 190-acre tract as identified in a bona fide offer made by a third party to Gaston until all of Gaston's 190-acre tract was sold.

*Belton Chopper*, 496 S.W.3d at 532 (rejecting an interpretation of a right-of-first-refusal provision where that interpretation was unreasonable).

The trial court erred in granting the Niemuths' motion for summary judgment and denying Gaston and Roundcount's motions.

### The Niemuths' Cross-Appeal for Attorney's Fees as Prevailing Party

The Niemuths filed a cross-appeal alleging the trial court erred in failing to award them attorney's fees as the prevailing party. Because we have determined the trial court erred in granting summary judgment in favor of the Niemuths, this point is denied.

### Conclusion

The trial court's judgment is reversed. The trial court is instructed to grant Gaston and Roundcount's motions for summary judgment and to enter judgment in their favor. The trial court is further instructed to determine the amount of Gaston's reasonable attorney's fees, including appellate attorney's fees, and enter an award of those reasonable attorney's fees in favor of Gaston.[7]

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

---

[7] Both Gaston and the Niemuths filed motions for their attorney's fees on appeal. The real estate contract signed by Gaston and the Niemuths contained an attorney's fee provision stating:

> [i]f either party has to enforce their rights under this agreement at any time and such enforcement shall require litigation in a court of competent jurisdiction, the prevailing party shall be awarded by the court as a part of the judgment or final order of the court, all of their costs of litigation including reasonable attorney's fees, costs of discovery, and court costs.

We grant Gaston's motion and deny the Niemuths' motion.